(No. 20158.—

John Wrobel *et al.* Appellants, *vs.* Josef Wojtasiek, Appellee.

*Opinion filed October 25, 1930—Rehearing denied Dec. 6, 1930.*

B. M. STEINER, for appellants.

LOUIS J. KLONOWSKI, and EWART HARRIS, for appellee.

Mr. CHIEF JUSTICE DUNN delivered the opinion of the court:

The appellants, John Wrobel and Antonina Wrobel, husband and wife, filed their bill in the superior court of Cook county against Josef Wojtasiek, appellee, for the specific performance of a contract for an exchange of real estate. The defendant answered and filed a cross-bill to cancel the contract as a cloud on his title. The cross-bill was answered and the cause was referred to a master, who reported the evidence with his findings and conclusions, recommending a decree granting the relief prayed for in the bill and dismissing the cross-bill for want of equity. Exceptions to this report were sustained by the chancellor and a decree was rendered dismissing the bill for want of equity and canceling the contract as a cloud on the title of the cross-complainant. The complainants in the original bill have appealed.

On July 2, 1927, Wrobel and Wojtasiek executed a written contract whereby Wrobel agreed to convey certain real estate in Chicago to Wojtasiek at a consideration of $19,000 and Wojtasiek agreed to convey certain real estate in DuPage county to Wrobel at a consideration of $10,000. The $9000 difference between the values of the properties exchanged was to be paid in cash on the delivery of the deeds, or Wrobel was to take back a first mortgage on the property conveyed to Wojtasiek, payable on or before five years after date, with five per cent interest. Brokerage fees, three per cent of $19,000, were to be paid by Wrobel to John Svatik. The contract contained other provisions not material to the present controversy.

The appellee's right to relief against the contract is based on his claim that the contract is very oppressive upon him and its execution by him was procured by unfair means

while he was intoxicated by the procurement of Wrobel and his agents. It is alleged in his amended answer that he is an ignorant and illiterate man of Polish extraction, unable to read or write the English language and not familiar with legal documents or with instruments conveying real estate; that he had been for many years employed in the tailoring business as a workman; that the complainants, by themselves and their agents and others conspiring together to defraud him, prepared the contract for the exchange of properties and on July 2, 1927, induced him to become intoxicated so that he was unable to know what he was doing or to understand the effect of his action; that if the signature purporting to be his mark appears on the contract it was placed there by him without knowing what he was doing and while he was under the influence of intoxicating liquor administered to him by the complainants and their agents, without his being informed of the nature of the instrument to which his signature was attached; that the transaction was void and fraudulent for the further reason that the value of the defendant's premises greatly exceeded the value of the premises of the complainants and that they were reasonably worth $19,000 while the complainants' premises were not reasonably worth more than $9000, and the contract provides for an exchange of defendant's property for complainants' at a grossly inadequate consideration, and the exchange is an unconscionable bargain, whereby the defendant would be defrauded of a large part of the value of his premises. The amended answer further alleged that the complainants, unknown to the defendant, procured Frank Nieminski, a neighbor of the defendant, to induce the defendant to enter into the contract, and in consideration thereof and of the services of Nieminski in procuring the signature of the defendant to the contract the complainants made and executed a promissory note for $500, payable to the order of Nieminski, for commission to him for his services; that Nieminski offered to show the defendant a

salesman for his property and introduced him to one Svatik, a real estate broker who was acting for the complainants; that thereafter Nieminski was active in inducing the defendant to sign the contract and took the title papers of the defendant without his consent and delivered them at the Depositors State Bank to one Jurik, who delivered them to an attorney for the bank for examination; that Nieminski, though pretending to be counseling and assisting the defendant, was, on the contrary, unknown to the defendant, in the pay and service of the complainants in procuring the signature of the defendant to the contract. The answer further alleged that the contract was not entered into fairly, freely and understandingly by the defendant, was not explained to him and he was not advised as to his obligations under it.

The appellee was born in Austria. At the time he testified before the master he was forty-five years old, was unmarried, and had lived in America thirty years and in Chicago twenty-seven years. He was a tailor working at his trade. He understood the Polish language but not the English. He lived in Downers Grove, where he owned a tract of land of about three acres, having a number of large trees on it and known as a picnic grove. There was a dancing pavilion on it of little value. The tract fronted 300 feet on Fairview avenue, a paved street, and there were unpaid assessments on it for the paving.

The appellants were the owners in joint tenancy of a lot fronting 25 feet on Fourteenth place, in the city of Chicago, 125 feet deep, having on it a three-story-and-basement brick building with a stone front, about thirty years old, having three front and three rear four-room flats. A few days before July 2, when the contract was executed, John Wrobel, John Svatik (a real estate broker in whose hands Wrobel had placed the flat-building for sale about a month earlier) and Joseph Pinda visited the property of the appellee but did not see him. After seeing the appellee's grove they

went to the grocery store and butcher shop of Frank Nieminski, in Downers Grove. Nieminski had not previously known Wrobel. He knew Svatik. They told Nieminski they would like to exchange Chicago property for the grove. Wojtasiek was not at home at that time, and Nieminski told them who owned the grove and promised to bring the owner to Chicago to see the building. There was no talk about paying Nieminski anything for his trouble. Before July 2, also, Wojtasiek came to Nieminski and talked with him about exchanging his property, because the assessments were too heavy and he could not pay them. He asked Nieminski if he knew about some property, and Nieminski said he did not know but he would show him a salesman, Svatik, a real estate man whose sign he had seen in a window on Ashland avenue, and Svatik would find it. Svatik testified that, in fact, he had known Nieminski three or four years when he was living near Svatik, three or four blocks away; that he was a broker when Svatik first knew him and had a butcher shop in Downers Grove.

Wrobel, Wojtasiek and Nieminski were Polish and Svatik was Slovak. On July 1, after Wojtasiek returned home from work, Nieminski took him in his car to the office of Svatik, in Ashland avenue, where they arrived at six o'clock. The three went over to look at Wrobel's property. They saw the building from the outside and then went inside. Wojtasiek said he was satisfied and Svatik said they would see it to-morrow morning better. The next morning Wojtasiek came by Nieminski's butcher shop in Downers Grove and Nieminski brought him over to Svatik's office about eleven o'clock. They went to Wrobel's property to see it on the inside and were admitted by Mrs. Kubalewski, who was a tenant of one of the flats. They went in and Wojtasiek inquired about the rooms, the amount of the rents, the toilets, asked about the flat up-stairs, how many rooms there were and if it was the same. He said it was not necessary to go up-stairs, when Svatik called him. They

were in the rooms about fifteen or twenty minutes. They then returned to Svatik's office, and there for the first time Wrobel and Wojtasiek met and talked about the exchange of the property. From there they went to the Ashland State Bank (a Polish bank) to have the contract written. The attorney of the State Bank, Platsek, was not in, and after waiting about two hours Wojtasiek proposed that they go to a different Polish bank. He wanted to go to a Polish bank so they could speak Polish. They then went to the Depositors State Bank, at Ashland avenue and Forty-seventh street. They inquired for John S. Jurik, who was the vice-president of the bank in charge of the real estate and loan department. Besides Wrobel and Wojtasiek all the other persons who were with them at the Ashland State Bank accompanied them to the Depositors State Bank. Jurik was acquainted with none of them. He talked with Wrobel and Wojtasiek and prepared the contract. He made the contract in the usual way by asking the price and the names and getting a legal description from the parties, and then he would explain to them the written parts of the contract. On the first page of the contract the words "eighteen thousand five hundred dollars" appear but are crossed out and nineteen thousand dollars written instead. This, he testified, was in order to take care of certain special assessments levied against the property of Wojtasiek. The price was $18,500, and Wojtasiek wanted Wrobel to pay the special assessments, which amounted to more than $500, but Wrobel agreed to take $500 more and assume the assessments and this was finally agreed to. After the contract was prepared and executed Wojtasiek called at the bank several times and wanted to know how the deal was getting along. Abstracts of title were left by both parties to the contract and were brought down to date. Opinions of title were rendered in reference to the property and the parties were notified. There were numerous objections to the title of Wojtasiek which were not cleared up by him.

The evidence does not sustain the charge in the amended answer that the complainants conspired to defraud the defendant and induced him to become intoxicated so that he was unable to know what he was doing and understand the purport or effect of his actions or that the signature purporting to be his mark was placed on the contract without his knowing what he was doing and while he was under the influence of intoxicating liquor administered to him by the complainants. There is no evidence tending to sustain this charge except that of the appellee himself, who testified that on July 2 he went to Chicago with Nieminski, who showed him the building from the street. This was the first time that he had seen it. He did not see anybody in the house, did not see a woman and did not go inside the house. He told Nieminski he did not want to exchange. Then Nieminski said, "We will go to Svatik's." They went over there and Wrobel gave him some whisky. That was the first time he met Wrobel. Svatik, Nieminski and Wrobel were there with him and right away they took him to the bank. The man there did not want to make a contract and they took him (defendant) down to the stock yards to a place where he had never been before. He testified that he did not know what happened there. Wrobel, Svatik and Nieminski were there. He was shown the contract and asked if he saw the man at the bank make it out. He said he did not know. He testified: "I can't read. No, I don't know anything. The man at the bank didn't read it. I don't know what they were doing. I don't remember anything. Yes, I drank the whisky they gave me that was turning my head. I drank over at Svatik's. That was before I went to the bank. I have never been drunk. * * * I drank a big glass. I don't drink because I don't remember anything when I drink. I don't like to drink whisky. I saw it was whisky. It was sort of red. After I drank it I got a big head. Mrs. Wrobel was at the bank. She came right away to the contract. I don't remember anything about the

price. I do not remember whether I had a pen in my hand that day. Nieminski took me out to Lyons—left me in the prairie until some one found me there. He found me in those prairies. I don't know who drove in the car with Nieminski when we went away from the bank. Nieminski drove the car." He denied all knowledge of anything in regard to the execution of the contract or what took place at the bank. He is not corroborated in any particular, but Jurik testified that there was nothing about his appearance, actions or conduct to indicate that he had been drinking or was under the influence of liquor at the time the contract was discussed or signed by him, and in this he is corroborated by the testimony of the others who were present. Svatik, Nieminski and Wrobel all deny Wojtasiek's testimony as to his having been given any whisky at Svatik's office or drinking any there.

As far as the allegation in regard to the value of the respective properties exchanged is concerned, without going into a minute discussion of the evidence it is sufficient to say that the preponderance of the evidence indicates that the value of the appellants' property was between $18,000 and $19,000 and the value of the appellee's property was from $9000 to $12,000. There was no evidence of any misrepresentations of value made by the appellants to induce the appellee to enter into the contract, and there is no basis for a refusal to enforce the provisions of the contract for any inadequacy of consideration or any unfairness by the appellants in the making of the contract.

One question remains. The appellee was an ignorant and illiterate man, unacquainted with business, following his trade as a tailor working at the machines, sewing pockets. Whether the discussion of the disposition of his property between him and Nieminski was introduced by the one or the other is uncertain, but in the discussion of the subject Nieminski assumed the attitude of a friend to Wojtasiek. The evidence tends to show that Nieminski, while apparently

acting as the friend of Wojtasiek, was secretly employed by Wrobel to procure Wojtasiek's consent to the exchange. Wrobel, Svatik and Pinda, after visiting the appellee's grove, called on Nieminski, who told them that the appellee owned the grove and promised to bring him to Chicago to Svatik's office. Wrobel and Svatik did not attempt to see the appellee themselves at the time but apparently left the matter of the meeting with the appellee to Nieminski's discretion. The appellee did not engage the services of Nieminski in his behalf to bring about an exchange of the property, and Nieminski's advances to the appellee apparently were merely acts of friendship, without any adverse interest. His statement that he knew of a real estate broker by seeing his name in the window on Ashland avenue indicates an intention to conceal his real relation to the transaction and the fact of his acquaintance with the broker. That he expected to be paid by someone for his part in the transaction was apparent from the fact that he asked, at the time the contract was executed, who would pay him for the use of his car and also for the gasoline and his time, and that Wrobel expected to pay him is shown by the fact that after the contract was executed he said he would pay Nieminski $500 for his trouble. The contract had then been signed, and a note was made out at the bank for Nieminski's $500 and Wrobel signed it. Wrobel testified that the note was for commission, and if the deal went through he was going to pay Nieminski $500 commission. It seems apparent that Nieminski's activity was inspired by his wish to earn the commission and was the result of his interview with Svatik and Wrobel after they had visited the appellee's grove a few days before July 2. The evidence justifies the conclusion that Nieminski brought about the contract of exchange.

Courts of equity will uphold contracts for the sale of real estate and enforce their performance when they are fairly entered into with complete understanding and no inequitable advantage is taken. Where, however, unfair ad-

vantage has been taken of the ignorance, the confidence, the friendship or the inexperience of one of the parties to the contract it will not be specifically enforced at the suit of the other. Where one desirous of purchasing real estate of another employs as his agent a person having the confidence of the owner for the purpose of bringing about a sale, and the secret agent, without disclosing his employment by the purchaser, betrays the confidence of the owner, and through his efforts the owner, without knowing the secret interest of the other by reason of his employment by the purchaser, is induced to enter into a contract for the sale of the real estate, the vendor, on discovering the interest of the secret agent, may refuse to perform the contract and its performance will not be enforced.

The cross-bill was not amended, after the fact of Nieminski's relation to the parties was disclosed, to allege that fact but remained with the allegations of a conspiracy to defraud the appellee of his property and unfairly taking advantage of his ignorance and illiteracy as a basis for the relief prayed for. The allegations of the cross-bill in these particulars were not sustained, and therefore the cross-complainant was not entitled to the relief sought by the cross-bill. The bill and the evidence must agree, and the proof by evidence of a case which is not alleged in the bill will not sustain a decree granting relief. *Kelly* v. *Kelly,* 293 Ill. 169.

The decree of the superior court of Cook county dismissing the bill for want of equity will be affirmed and the decree granting relief upon the cross-bill will be reversed and the cause remanded, with directions to dismiss the cross-bill for want of equity.

*Reversed in part and remanded, with directions.*