Max Englestein, Appellant, v. Walter Shammo, Appellee.

Gen. No. 9,296.

Opinion filed June 22, 1938.

B. JAY KNIGHT and JOHN E. GOEMBEL, both of Rockford, for appellant; WALKER F. HULL, of Rockford, of counsel.

SMITH & MENZIMER, of Rockford, for appellee.

MR. PRESIDING JUSTICE DOVE delivered the opinion of the court.

On January 4, 1929, George B. Gregory was the owner of a portion of two lots on East State street in Rockford, which were improved by a two-story business building. On that day he and his wife executed their notes for $17,500 and secured the payment thereof by a trust deed upon said property and John R. Shammo became the owner and holder of these notes and trust deed. Subsequently Max Englestein became the owner of the property, taking title thereto subject to said incumbrance. Prior to September 1, 1933, Englestein had defaulted in his payments. Shammo had threatened foreclosure proceedings and as a result of considerable negotiation, Englestein, in consideration of the payment of $125 and the cancellation

and surrender to him of said notes and trust deed conveyed said premises to Shammo and Shammo continued to own the premises until his death. On July 14, 1935, Shammo died and his two sons Walter L. Shammo and Charles A. Shammo became the owners thereof as tenants in common.

W. W. Parson was engaged in the real estate brokerage business in Rockford under the name of the W. W. Parson Agency and in the fall of 1936, Walter Shammo listed this property for sale with Parson at a price of $10,000. In February, 1937, Parson again saw Shammo and asked if the property was still for sale at $10,000 and was told that it was, and a little later, but during the same month, Parson informed Walter Shammo that he had received an offer of $5,500 for the property but Shammo refused to accept this offer. Later Parson told Shammo that he had an offer of $6,000 and a few days later that he had an offer of $7,000 and shortly after that that he had an offer of $7,250, all of which Shammo refused to accept. On the afternoon of April 24, 1937, Parson again came to Shammo's home and brought with him three instruments, two of which Shammo signed. Parson told Shammo that the instrument was an offer to purchase, executed in triplicate and that the third copy, which Shammo did not sign, was his, Shammo's, copy, which he should retain. The instruments signed by Shammo purport to be an offer by Max Englestein to purchase, through the Parson Agency, the real estate involved herein. By the provisions thereof, Englestein agreed to pay therefor the sum of $7,400 and the instruments recite that the purchaser had paid to the Parson Agency at the time he executed the instrument the sum of $100 as earnest money to be held in escrow by Parson and that upon the acceptance of the title to said premises, said sum of $100 would be applied on the purchase price. It further recited that $1,900 would be

paid in cash upon the delivery of the deed and acceptance of the abstract of title and that the remaining $5,400 was to be evidenced by a note for that sum due in five years bearing 5 per cent interest, interest payable semiannually, said note to be secured by a mortgage upon the premises. Attached to each instrument was the following acceptance: ''The undersigned Walter Shammo hereby accepts the foregoing offer on this 24th day of April, 1937 and acknowledges receipt of the said earnest payment of $100 and agrees that W. W. Parson Agency, Agents, shall hold the same in escrow, and agrees to pay the said W. W. Parson Agency for services rendered in connection with this offer, commissions which shall be computed upon the gross sale price and according to the schedule of commissions adopted by the Rockford Real Estate Board and now in force. In case the purchaser shall fail to make the payments or perform the covenants herein required or for any reason forfeits the said earnest money payment, then it shall first be applied in the payment of the said commissions and expenses, and any remainder shall be paid to the undersigned.'' Walter L. Shammo signed this acceptance and Parson took two of the instruments away with him and Shammo retained the one which Parson advised him was his copy. The instrument he retained was identical with the ones he signed except instead of purporting to be an offer of purchase made by Englestein, it purported to be an offer of purchase by C. M. Anderson and bore the signature of C. M. Anderson. Upon all three instruments and below the foregoing acceptance appears the following: ''We the undersigned W. W. Parson Agency on this 24th day of April, 1937 hereby acknowledge the receipt of the said earnest money payment of $100.00 which we accept and agree to hold in escrow according to the terms and conditions herein specified. W. W. Parson Agency By W. W.

Parson.'' Upon the one retained by Shammo in the handwriting of W. W. Parson appears: ''We agree to pay for continuation of abstract to date out of our commission. W. W. Parson Agency, W. W. Parson.'' At this time Shammo delivered to Parson the abstract of title and it was continued by a firm of abstracters of title to and including April 26, 1937. A note and mortgage, in accordance with the provisions of the offer, were executed by Englestein and his wife, and they, with the said $1,900 cash payment as therein provided, were tendered Shammo, who declined to receive the same and declined to convey the premises to Englestein. Thereupon Englestein filed his complaint against Walter Shammo for specific performance of the contract or in the alternative for damages for breach thereof. Shammo filed an answer and counterclaim. The counterclaim sought to have canceled the instruments executed by Shammo and to enjoin plaintiff from prosecuting any suit based thereon. The cause was heard by the chancellor, resulting in a decree in favor of the defendant and granting the counterclaimant the relief he sought and plaintiff brings the record to this court for review.

The record discloses that at the conclusion of the defendant's evidence in the court below, counsel for appellant made a motion to continue the cause and asked leave to amend the complaint by making Charles Shammo a party defendant. This motion was denied and this ruling is one of the errors relied upon for reversal. Counsel call our attention to section 25 of the Practice Act, which provides that where a complete determination of a controversy cannot be had without the presence of another party, the court may direct such party to be brought in, or where a person, not a party, has an interest or title which the judgment may affect, the court shall, upon application, direct him to be made a party. Counsel argue that the evi-

dence discloses that Charles Shammo had an undivided interest in the property involved herein, and that if he had been made a party, he could then have been called as a witness and it could have been shown that Walter Shammo was acting as agent for Charles. Sections 25 and 26 of the Practice Act provide for bringing in or adding new parties at any stage of the cause when the ends of justice may so require. The instant proceeding, however, was based upon a written contract and the parties to that contract were plaintiff and defendant respectively in the trial court. A complete determination of the issues could be and was made by the decree entered. Furthermore, counsel for appellant could have called Charles Shammo as a witness and proved by him what they say they could have proved, whether he was a party to the suit or not. Furthermore, counsel for appellant could not have been taken by surprise by anything that developed upon the hearing. The record discloses that the complaint was filed on July 6, 1937. The answer of the defendant was filed on September 1, 1937, and paragraph five thereof states that the title to the premises described in the complaint is held by Charles Shammo and Walter Shammo as tenants in common, each owning an undivided one-half thereof and that they acquired title through the estate of their father John R. Shammo. Paragraph three of the counterclaim is substantially the same as paragraph five of the answer. The cause was heard on September 25th and the evidence is that Walter Shammo delivered to Parson the abstract of title to the premises involved herein on April 24, 1937. That Shammo immediately took it to Holland Ferguson & Company, abstracters of title, who continued it down to and including April 26, 1937, and returned it to Parson, who then delivered it to Englestein for examination by his attorney. In our opinion the chancellor did not err in denying the plaintiff a continuance

and leave to amend his complaint by making Charles Shammo a party defendant.

Counsel for appellant, in their argument, state that their client particularly desired this property and therefore they brought this suit for specific performance. The evidence, however, discloses that appellee had title only to an undivided one-half interest therein and therefore, under the allegations of the complaint, specific performance could not be decreed. Conceding that this is true, counsel then contend that under the allegations of the complaint appellant was entitled to a money judgment against appellee for breach of his contract. Upon the trial appellant offered no testimony that he sustained any damages by reason of appellee's failure to complete the sale of the property to appellant. The counterclaim of appellee alleged that the offer of appellant to purchase the premises for $7,400 was grossly inadequate. In support of this allegation, appellee, over appellant's objection, was permitted to prove by two witnesses that the premises had a fair, cash market value on April 24, 1937, of at least $10,000. Counsel then argue that inasmuch as this evidence is in the record, it necessarily follows that he is entitled to a money judgment for $2,600, being the difference between the contract price of $7,400 and the market value of said premises, being said sum of $10,000. There is no merit in this contention. The evidence as to the market value of the premises on April 24, 1937 was competent, when offered by appellee in support of the allegations of the answer and counterclaim to the effect that to enforce the specific performance of such contract would be highly inequitable because the consideration was grossly inadequate.

The evidence discloses that no mention was ever made by Parson to appellee that appellant was in any way interested in buying this property or had any-

thing to do with its purchase. Parson testified that there was no occasion to mention the name of Englestein to Shammo and that he did not do so. Shammo testifies that appellant's name was not only not mentioned but that it did not appear upon either of the two instruments which appellee signed at the time he, appellee, signed them. In this he is contradicted by Parson and appellant. Appellee, however, was corroborated by Francis Keye, who testified he looked after and managed this property for appellee, that on April 26, 1937, appellant called him, Keye, over the phone and wanted to know why the deal between him and appellee was not going to be completed, that the witness asked him what interest he, appellant, had in the property, inasmuch as the contract appellee had was with C. M. Anderson, that appellant then said: "it makes no difference whom the contract is signed by, I am the buyer." This witness further testified that a few days later he stopped in appellant's store and appellant there said to him that he, appellant, had told Parson to go out and get Shammo's signature to a contract for the sale of this property and then bring the contract back to him and he, appellant, would then sign it and give him a check. Appellant denied a part of this conversation and testified that he gave the Parson Agency a check for $100 about two weeks prior to April 24, 1937, when he had offered to buy the property for $7,250, that this check was returned to him on April 24, 1937, when he gave them another check for the same amount. Appellant testified he had not been able to locate that check and counsel for appellant makes the following notation at the conclusion of the abstract of the testimony of the witnesses: "At this stage of the trial the $100 Englestein check had not been located. It was stipulated that in the event the same was found, it might be included in the record."

The testimony of Parson and Englestein is that the offer of Englestein to purchase was signed by appellant on April 24, 1937, and Parson accepted on that day appellant's check for $100. Parson testified that thereafter, but on the same day and before Parson ascertained from appellee whether he would accept the offer of appellant, he, Parson, accepted another identical offer from C. M. Anderson and accepted another $100 from him to apply upon the purchase price of this same property. No explanation for this is found in the record and the only explanation as to why Parson left with appellee the Anderson offer and stated to appellee that it was his copy of the instruments he had signed and made the notations thereon about paying for the continuation of the abstract is that a mistake must have been made in picking up the papers. We have read all the evidence in this record and are of the opinion that there was a mistake, perhaps an intentional one, made. From all the evidence it is apparent that there was a studied effort upon the part of Parson, to withhold from appellee the fact that appellant was seeking to become the purchaser of this property. Appellant at least acquiesced therein. Anderson never testified upon the hearing and if he made this offer he never contacted appellee. From all the evidence it is apparent the minds of the parties to this purported contract never met. The conduct of Parson, as disclosed by this record, leads to the conclusion that he was not in fact representing appellee. The decree is supported by the evidence and will be affirmed.

*Decree affirmed.*