**John A. Bolger, Plaintiff-Appellee, v. Nora M. Harrigan, et al., Defendants-Appellants.**

**Gen. No. 48,706.**

First District, Second Division.
February 21, 1963.
Rehearing denied April 11, 1963.

Ransom & Ransom, of Oak Park (Robert C. Ransom, of counsel), for appellants.

Collins and Harty, of Chicago (John M. Giltinon, of counsel), for appellee.

MR. JUSTICE FRIEND delivered the opinion of the court:

Plaintiff brought suit for specific performance of a written contract signed by Nora M. Harrigan, the principal defendant, as one of the joint owners of two lots in Mount Prospect, Illinois. The chancellor overruled the exceptions of Mrs. Harrigan to the master's report and entered a decree against her, from which she appeals.

Pending disposition of the case in this court, plaintiff moved to dismiss the appeal because, as he alleged, this court had lost jurisdiction since more than fifty days had elapsed between the filing of the notice of appeal and the filing of the report of proceedings, in violation of Supreme Court Rule 36 (1)(c) (Ill Rev Stats 1961, c 110, § 101.36). However, his allegation was in error because he mistakenly calculated the fifty-day period from October 23, 1961, the

date of the decree and of the order setting the amount of the appeal bond, rather than November 9, 1961, the date of the notice of appeal; therefore the motion, filed December 28, 1961, asking for an extension of time for filing the report of proceedings was just within the fifty-day period. On oral argument plaintiff admitted his error of computation. The motion to dismiss is denied.

Plaintiff in his two-page brief devotes his argument entirely to the motion for dismissal and, apparently relying thereon, makes no attempt to answer the several points urged for reversal of the decree by Mrs. Harrigan, thus leaving the status of the appeal as if plaintiff had filed no brief.

The facts disclose that in 1949 Nora M. Harrigan and her sister Julia E. McBarron, one of two additional defendants in this suit, purchased two lots in Laudermilk Villa, located in Mount Prospect, Illinois. Plaintiff planned to put up a shopping center in the village and wanted to acquire these lots in connection with his project. Accordingly, on August 1, 1956, plaintiff's daughter Mary Rowe visited Mrs. Harrigan at the latter's home and said she was interested in buying the two lots. Mrs. Harrigan told her she would sell her the one-half interest she owned for $3000 net. Before leaving, Mary Rowe stated that she would get in touch with Mrs. Harrigan later. In October of that year, Julian McBarron, the other additional defendant, who was the son of Mrs. McBarron and the nephew of Mrs. Harrigan, delivered to his aunt a contract prepared by plaintiff, together with a check for $200 as earnest money. Counsel for Mrs. Harrigan say that at the time she was ill and that she was handicapped by impaired hearing and eyesight; that she was unable to read the contract and that no one read it to her, and believing it to be an agreement to sell her interest in the lots to Mary

131

Rowe for $3000 net, she signed the document. She then retained it and the check for about a month. In the interim, she says, she was informed that the contract did not provide for her to sell her interest in the lots to Mary Rowe but to sell the entire interest to plaintiff Bolger, and she learned for the first time that Mary Rowe was plaintiff's daughter. She testified that she therefore returned the contract and check to her nephew Julian McBarron, instructing him to cancel the contract and return it and the check to plaintiff.

Julian McBarron, whose mother, residing in California, owned the two lots jointly with Mrs. Harrigan, testified that he was acting as agent or messenger and escrowee for plaintiff, but the evidence discloses that Julian McBarron authorized plaintiff to pay the taxes past due on the property and the title charges of Chicago Title and Trust Company. In accordance with this authorization, plaintiff made the payments for these bills, and later prepared a deed for Mrs. Harrigan's signature. Following these events, Julian McBarron, at the direction of Mrs. Harrigan, returned the contract and check to plaintiff and told him that the only basis on which she would sell her property was to get $3000 net for her interest, and that she would not pay the various charges assessed against her for taxes and title. Complaint was then filed for specific performance.

█ Mrs. Harrigan assigns various grounds for reversal. She first urges that since she had title only to an undivided one-half interest in the lots, specific performance could not be decreed against her, citing Englestein v. Shammo, 296 Ill App 162, 15 NE2d 939 (1938). Two comparatively recent Illinois Supreme Court cases hold squarely that specific performance will lie against a joint owner who has signed a contract for the sale of his interest in the property:

Schiro v. W. E. Gould & Co., 18 Ill2d 538, 165 NE2d 286 (1960); and Cities Service Oil Co. v. Viering, 404 Ill 538, 89 NE2d 392 (1950).

■ In several of the other objections relating to Mrs. Harrigan's illness and impairment of sight and hearing, she argues that she thought she was selling her interest to plaintiff's daughter Mary Rowe, not to plaintiff; but Mrs. Harrigan had the contract in her possession for nearly a month and apparently had conversations with her nephew Julian who represented her, and she must have known that she had agreed to sell to plaintiff and not to his daughter. She also testified that when she first received the contract she was sick and did not know what she was doing. We have carefully examined her testimony, and it appears that she fully understood the transaction into which she had entered. She expressed surprise that there were any unpaid taxes, and proceeded to the courthouse where she paid ten dollars for an examination to satisfy herself that taxes were past due. Her counsel argue that where there are circumstances of misapprehension or mistake which would made the enforcement of the contract oppressive or unjust it will not be enforced, and that if unfair advantage has been taken of the ignorance, confidence, or inexperience of one of the parties to a contract for the sale of real estate it will not be specifically enforced at the suit of the other; in support of these contentions they rely on Kukulski v. Bolda, 2 Ill2d 11, 116 NE 2d 384 (1954), and Wrobel v. Wojtasiek, 341 Ill 330, 173 NE 348 (1930). In the Kukulski case, in which plaintiffs sought specific performance of a real estate contract, the trial court dismissed their complaint for want of equity. On review the court decided (p 19) that because of inadequate consideration, along with a condition of habitual drunkenness and mental deterioration on the part of the seller, the transaction

indicated that unfair advantage was taken of the defendant, held that it would be unconscionable to enforce the contract as prayed for in the complaint, and affirmed the decree of the trial court. In the Wrobel decision plaintiffs sought specific performance of a contract for an exchange of real estate. The defendant was an illiterate man of Polish extraction, unable to use English, unfamiliar with legal documents or instruments conveying real estate; plaintiffs, unknown to him, on a commission basis procured a neighbor of his to induce the defendant to enter into the contract. The court upheld (pp 338–339) the right of the defendant to relief against the contract on the ground that his execution thereof was procured by unfair means. From a careful reading of the record in the case before us, we are convinced that the cases cited by counsel are not analogous to the situation before us. Mrs. Harrigan indicated in her testimony that she was cognizant of the transaction, and her nephew Julian McBarron evidently acted for her in the negotiations with plaintiff.

■ One of the grounds urged for reversal is that specific performance will not be enforced as a matter of course when it will impose unreasonable and unjust hardships on one of the parties. Specifically it is urged that much of the purchase price due Mrs. Harrigan under the specific performance decree will be dissipated by costs, master's fees, taxes, payment of past due taxes, and establishment of title. In support of this contention counsel cite four cases: Danberg v. Langman, 318 Ill 266, 271, 149 NE 245 (1925); Keogh v. Peck, 316 Ill 318, 325, 147 NE 266 (1925); Allen v. Hayes, 309 Ill 374, 377–378, 141 NE 188 (1923); and Mackie v. Schoenstadt, 307 Ill 398, 405, 138 NE 686 (1923). In all these cases specific performance was enforced, but in each instance the court underscored the requirement that the contract must be

134

fairly and understandingly entered into and that no circumstances of oppression or fraud appear. In the case at bar the contract was signed by Mrs. Harrigan, and a check for the earnest money was delivered to her; she retained both the contract and the check for approximately thirty days. In discussions with her nephew Julian McBarron she undoubtedly knew that she had entered into the agreement, and that the check which accompanied it was earnest money payment.

■ Other grounds urged for reversal are that Mrs. Harrigan indicated no intent to sell her property to plaintiff, and that there was no delivery of the contract. Both these contentions were resolved adversely to Mrs. Harrigan upon evidence adduced before the master, and the evidence supports his recommendations and conclusions.

To be sure, the assessment of costs, master's fees, past due taxes, and title charges will leave Mrs. Harrigan very little of the $1500 to be paid her under the decree. This is unfortunate, but it was her decision to litigate the matter. The master's charges are reasonable, and the other deductions cannot be challenged because exhibits introduced in evidence show that plaintiff was required to pay taxes, etc.; in fact, was authorized to do so by Julian McBarron.

For the reasons indicated, plaintiff's motion to dismiss is denied; the decree of the Superior Court in his favor is affirmed.

Motion to dismiss denied; decree affirmed.

BRYANT, P. J. and BURKE, J., concur.