

FILED

Jul 16 2020, 10:02 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Philip R. Skodinski
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caroline G. Templeton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Tyler Wesley Riggle,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

July 16, 2020

Court of Appeals Case No.
20A-CR-357

Appeal from the St. Joseph
Superior Court

The Honorable Jeffrey L. Sanford,
Judge

Trial Court Cause No.
71D03-1902-F6-113

**Friedlander, Senior Judge.**

[1]     Tyler Riggle appeals his conviction of unlawful possession of a syringe, a Level 6 felony.[1]  We affirm.

[2]     In July 2018, Riggle was found lying face down near the entrance to the Four Winds Casino, which is located in St. Joseph County on tribal land of the Pokagon Tribe.  Riggle was blue-gray in color, unresponsive with very shallow, occasional breathing, and his eyes had rolled back in his head.  Police officers arrived on the scene and administered a dose of Narcan.  Medics arrived, administered a second dose of Narcan, and prepared to transport Riggle to the hospital.  For the medics' safety, one of the officers performed a pat-down search of Riggle prior to him being transported.  In Riggle's front pants pocket, the officer found a syringe containing liquid, two empty syringes, a metal spoon, a cotton swab, and a cellophane wrapper.  Subsequent testing revealed that the liquid in the syringe contained heroin.

[3]     Based upon this incident, the State charged Riggle with unlawful possession of a syringe, a Level 6 felony.  A jury convicted Riggle of this offense, and the court sentenced him to 464 days.  Riggle now appeals.

[4]     Riggle contends the State's evidence was not sufficient to support his conviction.  His argument is two-fold:  (1) Riggle asserts the State's evidence was insufficient to establish that his criminal offense was governed by state law;

---

[1] Ind. Code § 16-42-19-18 (2015).

and (2) he claims that the State did not prove he is non-Indian.[2] We address these claims in turn.

[5] When we review a challenge to the sufficiency of the evidence, we neither reweigh the evidence nor judge the credibility of the witnesses. *Sandleben v. State*, 29 N.E.3d 126 (Ind. Ct. App. 2015), *trans. denied*. Instead, we consider only the evidence most favorable to the verdict and any reasonable inferences drawn therefrom. *Id.* If there is substantial evidence of probative value from which a reasonable fact-finder could have found the defendant guilty beyond a reasonable doubt, the verdict will not be disturbed. *Labarr v. State*, 36 N.E.3d 501 (Ind. Ct. App. 2015).

### 1. Territorial Jurisdiction

[6] Noting the offense occurred on Pokagon tribal property, Riggle argues the State's evidence was insufficient to establish it had jurisdiction over this offense. Particularly, Riggle claims the State's witness, who testified concerning whether state law applied in this case, did not qualify as an expert.

[7] Territorial jurisdiction is the authority of the State to prosecute a person for an act committed within the State's territorial boundaries. *Ortiz v. State*, 766 N.E.2d 370 (Ind. 2002); *see* Ind. Code § 35-41-1-1(b)(1) (2009) (a person may be

---

[2] We use the terms "Indian" and "non-Indian" merely to be consistent with federal statutory terms and relevant caselaw.

convicted of crime under Indiana law if either conduct or result that is element of offense, or both, occur in Indiana).  Although territorial jurisdiction is not necessarily thought of as an element of the offense, the State is required to prove it beyond a reasonable doubt.  *Ortiz*, 766 N.E.2d 370.

[8]	Evidence Rule 702 concerns expert witness testimony and provides:

> (a) A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue.

> (b) Expert scientific testimony is admissible only if the court is satisfied that the expert testimony rests upon reliable scientific principles.

[9]	Evidence Rule 701, on the other hand, provides:  "If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:  (a) rationally based on the witness's perception; and (b) helpful to a clear understanding of the witness's testimony or to a determination of a fact in issue."  Rule 701 encompasses persons whom the courts have labeled "skilled witnesses."  *A.J.R. v. State*, 3 N.E.3d 1000, 1003 (Ind. Ct. App. 2014).  A skilled witness is a person who possesses specialized knowledge short of that necessary to be declared an expert under Evidence Rule 702 but beyond that possessed by an ordinary juror.  *Id.*  Not only can skilled witnesses testify about their observations, but also they can testify to opinions or inferences that are based solely on facts within their own personal knowledge.  *Hawkins v. State*, 884

N.E.2d 939 (Ind. Ct. App. 2008), *trans. denied*. It is within the trial court's discretion to determine whether a witness is qualified to give an opinion. *Id.*

[10] Here, the State never contended its witness, Sergeant Schaaf, was an expert. Therefore, his opinion must be examined under Rule 701. Accordingly, as indicated by the rule, the Sergeant's opinion must be rationally based on his perception of the facts—this simply means that the opinion must be one that a reasonable person could normally form from the perceived facts, which are facts received by the witness directly through any of his own senses. *Satterfield v. State*, 33 N.E.3d 344 (Ind. 2015).

[11] At trial, once the State rested, defense counsel moved for a judgment on the evidence on the basis that the State's evidence was not "sufficient to establish the crime alleged and defined by statute." Tr. Vol. 2, p. 73. After response by the State, the court denied the motion and asked defense counsel if he had another basis for the motion. Counsel responded that "the only other basis is whether or not the offense occurred in the State of Indiana or whether it occurred on an Indian[ ] reservation." *Id.* The court then clarified:

> THE COURT: So your argument is that the Pokagon Tribe, the Indian tribe, is a separate, distinct nation, and that had this offense occurred on tribal land that the proper venue or for[u]m would have been the tribal courts; is that your argument in a nutshell?
>
> [DEFENSE COUNSEL]: Yes, basically yes.

> THE COURT:  And that the State lacks jurisdiction to prosecute this case because the crime, Possession of Syringe, was committed not in the State of Indiana but in the Pokagon Nation?
>
> [DEFENSE COUNSEL]:  Yes.

*Id.* at 75.

[12]  Over defense objection, the court allowed the State to reopen its case and recall one of its witnesses to address the defense motion.  The State recalled Sergeant Schaaf, an officer with the Pokagon Band Tribal Police Department.  As the State began to question Sergeant Schaaf, defense counsel objected to his testimony on the basis that there was "no indication that he's an expert on tribal jurisdiction and law."  *Id.* at 89.  The court ruled, "I guess the objection would be sustained" and instructed the State to "lay a better foundation."  *Id.* at 89, 90.  The State then questioned Sergeant Schaaf as follows:

> Q  How long have you been a law enforcement officer for Pokagon?
>
> A  Over five years.
>
> Q  And have you received any training or experience related to the enforcement of laws on Pokagon property?
>
> A  Yes.  We have an extensive field training process I was put through which lays a basic foundation.  In terms of specialized training, the U.S. Attorney's Office up in Grand Rapids puts on a class called Criminal Jurisdiction in Indian Country which

provides information as to specific jurisdiction considerations when enforcing law on reservation land.

Q Did you take that class?

A I did.

Q And based upon your knowledge from that class, can you describe to the jury what that means as far as imposing the law on Pokagon land?

A It's a complicated situation. There's a lot of moving parts as far as it goes. In any given case we have three courts that may have jurisdiction or may not have jurisdiction over a matter. There's the Pokagon Tribal courts. There is[sic] the state courts of Michigan or Indiana respectively depending on where we're working. And there's also the federal courts. We take into account whether the suspect is [N]ative or non-[N]ative, the victim is Native or non-Native, and the specific offense that's in question to determine which court has exclusive jurisdiction or concurrent jurisdiction over that particular case.

*******

Q If Mr. Riggle was not a [N]ative to the Pokagon property, would there be any ability to prosecute him under the tribal laws for a victimless offense?

A There would not be. The Pokagon Tribal Court and any tribal court for that matter has no criminal jurisdiction over a non-[N]ative person.

Q So describe how – we started talking about being sworn in multiple jurisdictions. How does that relate to your ability to

enforce the laws of the State of Indiana on a non-[N]ative person?

A  We are special deputies in the County of St. Joseph, and that's an authority bestowed onto us by the current sheriff.  That special deputization is the only tool that we have to enforce [the] law on a non-[N]ative person outside of our federal jurisdiction.

*******

Q  So in the case of unlawful possession of a syringe, where would the jurisdiction lie for that based upon your training?

A  State court.

*Id.* at 90-91, 92.

[13]  Defense counsel lodged no further objection to Sergeant Schaaf's testimony, and cross examined him, in part, as follows:

Q  Are any of these principles laid down in cases or statutes?

A  Yes.  Specifically the fact that a tribal court does not have criminal jurisdiction over a non-[N]ative, that's based on case law to the best of my understanding.

*******

Q  Where in the Pokagon law does it say that it doesn't apply to a non[-][N]ative?

A  It would be a case law situation rather than —

Q Case law from where?

A I would have to look it up. It was part of our training. I don't have all the case law memorized.

\*\*\*\*\*\*\*

Q I'm asking you about what you were taught when you were taught by the people from the U.S. Attorney's Office about what rights states had in relation to tribal lands?

A The information I have received is in the case of a non-[N]ative state law still fully applies.

*Id.* at 92, 94.

[14] On redirect, the State questioned the Sergeant as follows:

Q Is one of the purposes of being cross-deputized so that you can enforce state laws even though they occur on tribal lands?

A Correct.

Q And in that case would that apply to generally non-[N]atives on the Pokagon property?

A That's correct.

Q In the situation where there's an offense such as unlawful possession of a syringe with a non-[N]ative, would that be something that the Tribal Police could prosecute under Pokagon laws?

A  They could not.

*Id.* at 95.

[15] Thus, the Sergeant testified that he had been with the Pokagon Band Tribal Police Department for over five years and is cross-deputized as a special deputy in the St. Joseph County Sheriff Department in order to be able to enforce state law on tribal property. He has had extensive field training as well as specialized training concerning criminal jurisdiction on tribal property. He testified that his opinion was based on his personal training and experience; accordingly, his testimony was rationally based on his perception.

[16] Further, Sergeant Schaaf's testimony was helpful in determining a fact at issue—namely, whether Riggle could be charged and tried under state law. Specifically, the Sergeant testified that during his criminal jurisdiction training they were instructed that tribal courts do not have criminal jurisdiction over non-Indians for a victimless offense.[3] Rather, caselaw dictates that state law applies to a criminal offense that is committed by a non-Indian on tribal land and either is committed against a non-Indian victim or is victimless.[4] Without

---

[3] While we are hesitant to describe any drug offense as a "victimless" crime, we use the term to be consistent with the caselaw on this subject.

[4] Indeed, the United States Supreme Court has long recognized, which numerous state and lower federal court opinions have acknowledged, that state courts have jurisdiction over a crime in which a non-Indian defendant commits a victimless offense or an offense against another non-Indian on Indian lands. *See Solem v. Bartlett*, 465 U.S. 463, 465 n.2, 104 S. Ct. 1161, 1163, 79 L. Ed. 2d 443 (1984) (noting that within Indian country, state jurisdiction is limited to crimes by non-Indians against non-Indians and victimless crimes by non-Indians); *U.S. v. Wheeler*, 435 U.S. 313, 324 n.21, 98 S. Ct. 1079, 55 L. Ed. 2d 303 (1978) (crimes committed by non-Indians against non-Indians are subject to state jurisdiction), *superseded by statute on other*

this testimony, the jury would not have been able to determine within which jurisdiction Riggle's criminal action rested.

[17] Defense counsel raised no further objection and had ample opportunity to, and did, cross examine the Sergeant on his opinion and the source of his knowledge. Skilled witness testimony generally need only meet a relatively low bar in order to be admissible, *Hawkins*, 884 N.E.2d 939, and Sergeant Schaaf's testimony reaches that standard. His opinion testimony was both rationally based on his perceptions and assisted the jury in determining a fact at issue as is required by Evidence Rule 701. Therefore, the trial court did not abuse its discretion when it determined Sergeant Schaaf was qualified to give an opinion, and his testimony was sufficient to establish the authority of the state to charge Riggle in this case.

---

*grounds in* 25 U.S.C. §1301 (2) (stating that Indian tribe has inherent power to exercise criminal jurisdiction over all Indians); *New York ex rel. Ray v. Martin*, 326 U.S. 496, 66 S. Ct. 307, 90 L. Ed. 261 (1946) (recognizing that states have jurisdiction over crimes by non-Indians against non-Indians and which do not affect Indians); *U.S. v. McBratney*, 104 U.S. 621, 26 L. Ed. 869 (1881) (stating that states have jurisdiction over crimes committed within Indian tribal land by non-Indians against non-Indians); *see also U.S. v. Langford*, 641 F.3d 1195, 1199 n.3 (10th Cir. 2011) (stating that states possess exclusive criminal jurisdiction over crimes occurring in Indian country if there is neither an Indian victim, nor an Indian perpetrator; noting that government should have been aware of its own internal guidelines and citing U.S. Dep't of Justice, United States Attorneys' Manual, tit. 9–20.100, Criminal Resource Manual § 683 (1997), which notes that as a general rule states, not federal government, have jurisdiction over victimless crimes committed by non-Indians in Indian country); *Ross v. Neff*, 905 F.2d 1349, 1353 (10th Cir. 1990) (quoting *Solem*, 465 U.S. at 465 n.2 and stating, "The Supreme Court has expressly stated that state criminal jurisdiction in Indian country is limited to crimes committed 'by non-Indians against non-Indians ... and victimless crimes by non-Indians.'"); and *People v. Collins*, 826 N.W.2d 175 (Mich. Ct. App. 2012) (holding that Michigan state courts have jurisdiction over non-Indian defendants where offense is committed on Indian lands or in Indian country and offense is either victimless or victim is not Indian).

## 2. Subject Matter Jurisdiction

[18] Riggle next asserts the State failed to prove he is a non-Indian, and he argues that the burden of proof is on the State to establish his status.

[19] Riggle's claim is a challenge to the trial court's subject matter jurisdiction, which refers to the court's power to hear and decide a class of cases. *Alvarado v. Nagy*, 819 N.E.2d 520 (Ind. Ct. App. 2004). The question of subject matter jurisdiction may be raised at any time. *Id.*

[20] Courts of this state obtain subject matter jurisdiction through the Indiana Constitution or a statute. *Brown v. State*, 64 N.E.3d 1219 (Ind. Ct. App. 2016), *trans. denied* (2017). Superior courts in Indiana exercise "original and concurrent jurisdiction in all civil cases and in all criminal cases." Ind. Code § 33-29-1-1.5 (2011). An exception to this statute and to Indiana Code section 35-41-1-1(b)(1), the territorial jurisdiction statute discussed previously, is the Indian Country Crimes Act. This Act preempts state court jurisdiction over most criminal proceedings concerning offenses committed by an Indian against another Indian on Indian land. *See* 18 U.S.C. §§1152 (1948), 1153 (2013). The federal statutes, however, are silent on the issue of who bears the burden of proof to establish the jurisdictional fact of Indian status so as to remove the proceeding from state court jurisdiction.

[21] Although Indiana courts have not addressed this issue, we have generally held that the party challenging subject matter jurisdiction carries the burden of establishing that jurisdiction does not exist. *L.M.A. v. M.L.A.*, 755 N.E.2d 1172

(Ind. Ct. App. 2001). Further, where the facts with regard to an issue lie peculiarly in the knowledge of one party, that party is best situated to bear the burden of proof. *Smith v. U.S.*, 568 U.S. 106, 133 S. Ct. 714, 184 L. Ed. 2d 570 (2013). In addition, generally, the defendant has the burden of proof as to a fact relied on as justification or excuse where the subject matter thereof relates to him personally and/or lies peculiarly within his knowledge, and proof of its nonexistence by the prosecution would be relatively difficult or inconvenient. 23 C.J.S. *Criminal Procedure and Rights of Accused* § 968 (2020).

[22] To place the burden of proof on the State in this case would put it in the difficult position of having to affirmatively prove a negative of a fact (i.e., that Riggle is not an Indian) that is peculiarly within his knowledge and that of the particular tribe and its members and which is more readily ascertainable by him than by the State. Unlike territorial jurisdiction which is a requisite element, non-Indian status is not a requisite element of establishing a criminal offense in this state, including the offense of unlawful possession of a syringe. *See* Ind. Code § 16-42-19-18. Yet, if we were to place the burden of proof in this instance on the State, the practical effect would be to compel the State to allege in *every* information negations of every conceivable exception to state court jurisdiction. For example, in addition to non-Indian status in certain cases, the State would have to allege in other instances that the offense did not occur on property owned by the federal government, that property taken was not federal property, or that an assault was not committed upon a federal officer.

[23] Several courts that have addressed this issue have held that a defendant bears the burden to show facts that would establish an exception to the state court's jurisdiction under the Indian Country Crimes Act. *See Young v. State*, 2015 WL 567012 (Iowa Ct. App. Feb. 11, 2015) (stating it was defendant's burden to show he was enrolled member of tribe and offense occurred on Indian reservation in order to establish exception to state court's jurisdiction); *State v. Verdugo*, 901 P.2d 1165 (Ariz. Ct. App. 1995) (holding that defendant bears burden of showing Indian status and that crime occurred in Indian country to establish trial court's lack of jurisdiction); *State v. St. Francis*, 563 A.2d 249 (Vt. 1989) (holding that defendant has burden of proving Indian heritage and that offense occurred within Indian country outside state's jurisdiction); *Pendleton v. State*, 734 P.2d 693 (Nev. 1987) (holding that defendant has burden of showing applicability of negative exceptions in jurisdictional statutes); *State v. Cutnose*, 532 P.2d 896 (N.M. Ct. App. 1974) (holding that defendants bear burden of proving lack of state court jurisdiction), *cert. denied*.

[24] Based on the considerations we have discussed, we agree with these courts and thus hold that the burden to show facts that would divest the trial court of jurisdiction under the Indian Country Crimes Act is on the defendant, not the State.

[25] Here at trial, Sergeant Schaaf testified that Riggle was "in all likelihood" not an Indian because generally Indians carry with them a tribe identification card, and no such card was found on Riggle. Tr. Vol. 2, p. 96. Riggle neither objected to this evidence, nor affirmatively asserted or offered any evidence that

he is a member of the Pokagon Tribe. Riggle's "jurisdictional defense is not roped securely to facts proven of record but hangs by the thread of possibility" and is therefore unavailing. *Verdugo*, 901 P.2d at 1169. Consequently, Riggle did not meet his burden of alleging his membership or affiliation with the Pokagon Tribe, or any tribe, in order to establish the trial court's lack of jurisdiction.

[26] Accordingly, we conclude the State's evidence was sufficient to sustain Riggle's conviction.

[27] Judgment affirmed.

Najam, J., and Mathias, J., concur.