NEW YORK EX REL. RAY *v.* MARTIN, WARDEN.

No. 158.   Argued December 13, 1945.—Decided January 7, 1946.

*Mr. Thomas J. McKenna* for petitioner.

*Henry S. Manley,* Assistant Attorney General of New York, with whom *Nathaniel L. Goldstein,* Attorney General, and *Orrin G. Judd,* Solicitor General, were on the brief, for the Warden and the State of New York. *Mr. Charles E. Congdon* for Cattaraugus County.

*Mr. Roger P. Marquis,* with whom *Solicitor General McGrath, Messrs. J. Edward Williams, John C. Harrington* and *Walter J. Cummings, Jr.* were on the brief, for the United States, as *amicus curiae,* urging affirmance.

MR. JUSTICE BLACK delivered the opinion of the Court.

In *United States* v. *McBratney,* 104 U. S. 621, this Court held that the State courts of Colorado, not the Federal courts, had jurisdiction to prosecute a murder of one non-Indian by another committed on an Indian reservation located within that State. The holding in that case was that the Act of Congress admitting Colorado into the Union overruled all prior inconsistent statutes and treaties and placed it "upon an equal footing with the original States . . ."; that this meant that Colorado had "criminal jurisdiction over its own citizens and other white persons throughout the whole of the territory within its limits, including the Ute Reservation"; and that consequently,

the United States no longer had "sole and exclusive juris-
diction" over the Reservation, except to the extent neces-
sary to carry out such treaty provisions which remained
in force. That case has since been followed by this Court [1]
and its holding has not been modified by any act of Con-
gress. The question this case presents is whether New
York, which is one of the original States, has jurisdiction
to punish a murder of one non-Indian committed by an-
other non-Indian upon the Allegany Reservation of the
Seneca Indians located within the State of New York.

In 1939, the petitioner was sentenced to life imprison-
ment in a New York State court for the murder of a man
in the City of Salamanca, which is within the Allegany
Reservation but has only 8 Indian families living among
its 9,000 inhabitants. He later brought this habeas corpus
proceeding in a county court of the State.[2] He alleged that
since the Indian reservation was under the exclusive juris-
diction of the United States, the State courts lacked juris-
diction to try and convict him. The County Court of
Wyoming County heard the case and ordered the writ
dismissed. 181 Misc. 925, 47 N. Y. S. 2d 883. Both the
Appellate Division of the Supreme Court, 268 App. Div.
218, 52 N. Y. S. 2d 496, and the Court of Appeals, 294
N. Y. 61, 60 N. E. 2d 541, affirmed the dismissal.[3] We
granted certiorari because of the federal questions raised.

---

[1] *Draper* v. *United States*, 164 U. S. 240. See also *United States* v.
*Ramsey*, 271 U. S. 467, 469; *Donnelly* v. *United States*, 228 U. S. 243,
271; *United States* v. *Kagama*, 118 U. S. 375, 383.

[2] A previous petition in the Federal courts had been denied because
relief had not first been sought in the New York State courts. 54
F. Supp. 218; 141 F. 2d 300.

[3] The New York Court of Appeals held, and the State urges here,
that the State court had jurisdiction by virtue of § 7 of the Act of
Congress passed in 1875, 18 Stat. 330, authorizing certain parts of the
Allegany Reservation to be surveyed for establishment of a number
of villages including Salamanca. Section 8 provided among other
things that "all the municipal laws and regulations of said State [New
York] may extend over and be enforced within said villages." Act-

We think the rule announced in the *McBratney* case controlling and that the New York Court therefore properly exercised its jurisdiction. For that case and others which followed it all held that in the absence of a limiting treaty obligation or Congressional enactment each state had a right to exercise jurisdiction over Indian reservations within its boundaries.[4] Petitioner claims that the *McBratney* case differs from this proceeding in several respects. First, he contends that Colorado could exercise greater powers over its Indian reservations than New York can by virtue of the enabling act which admitted Colorado into the Union, a similar enactment being lacking here since New York is one of the original states. As we have seen, the Colorado enabling act was held in the *McBratney* case to put Colorado "upon an equal footing with the original States," and to repeal earlier legislation and treaties inconsistent with the enabling act. The fact that Colorado was put on an equal footing with the original states obviously did not give it any greater power than New York. And no greater power can be inferred from the repealing function of the enabling act, since, as we shall point out, the statutes and treaties which petitioner claims deprive New York of jurisdiction do not in fact do so.

This brings us to petitioner's further contention that certain Federal statutes specifically grant the United States exclusive jurisdiction over the Seneca Reservation. He points out that the laws of the United States make murder a crime "if committed in *any place* within the sole and

---

ing under what it conceived to be the authority granted by this Section, New York passed a law, Chap. 188 of New York Laws of 1881, extending its "general law" so as to apply to Salamanca. Since we think the rule in the *McBratney* case controlling, we find it unnecessary in this case to pass on the scope and validity of this Act.

[4] This holding was in harmony with general principles governing this subject. *Surplus Trading Co.* v. *Cook*, 281 U. S. 647, 651; *Hallowell* v. *United States*, 221 U. S. 317, 320; *United States* v. *McGowan*, 302 U. S. 535, 539.

exclusive jurisdiction of the United States . . .''; 18 U. S. C. 452; that § 2145 of the Revised Statutes, 25 U. S. C. 217, makes this murder statute applicable to "Indian country"; and contends that the Seneca Reservation is Indian country, and that consequently New York has no jurisdiction to punish a murder committed on that Reservation. The cases following the *McBratney* case adequately answer petitioner's contentions concerning § 2145, even if we assume, what we need not decide, that the Seneca Reservation is Indian country within the meaning of the statute. While § 2145 of the Revised Statutes has been held applicable in territories to crimes between whites and whites which do not affect Indians,[5] the *McBratney* line of decisions stands for the proposition that States, by virtue of their statehood, have jurisdiction over such crimes notwithstanding § 2145.[6] See also *New York* v. *Dibble,* 21 How. 366.

Petitioner further contends that the *McBratney* rule is not applicable here because exercise of state jurisdiction over non-Indians at Salamanca would violate the Treaty of 1794, 7 Stat. 44. We can find no language in that Treaty that lends itself to such interpretation. The Treaty was one of peace and friendship between the United States and the Indians. It provided against private revenge or retaliation on account of injuries done by individuals on either side. Such injuries were to be reported by each nation to the other with a view of having the nation to which the individual offender belonged take "such prudent measures

---

[5] *In re Wilson,* 140 U. S. 575; *Pickett* v. *United States,* 216 U. S. 456, 458.

[6] In *Donnelly* v. *United States, supra,* 228 U. S. at p. 270, this Court pointed out that the provisions contained in § 2145 of the Revised Statutes were first enacted as § 25 of the Indian Intercourse Act of June 30, 1834, 4 Stat. 729, 733. This means that the statute was in effect at the time of the *McBratney* decision. Yet, significantly, the Court did not even find it necessary to mention it.

. . . as shall be necessary to preserve . . . peace and friendship unbroken." This procedure was to be followed until Congress made "other equitable provision for the purpose." This latter language, upon which the petitioner most strongly relies as imposing a duty upon the United States to exercise jurisdiction over the whole Reservation to the exclusion of the State, even as to offenses committed by whites against whites, cannot properly be interpreted as the petitioner asks. The entire emphasis in treaties and Congressional enactments dealing with Indian affairs has always been focused upon the treatment of the Indians themselves and their property. Generally no emphasis has been placed on whether state or United States courts should try white offenders for conduct which happened to take place upon an Indian reservation, but which did not directly affect the Indians. Neither the 1794 Treaty nor any other requires a holding that offenses by non-Indians against non-Indians disturbing the peace and order of Salamanca are beyond New York's power to punish.

*Affirmed.*

MR. JUSTICE JACKSON took no part in the consideration or decision of this case.