STATE of North Dakota, Plaintiff
and Appellee,

v.

Terrance HOOK, Defendant
and Appellant.

Cr. Nos. 900280–900282.

Supreme Court of North Dakota.

Oct. 10, 1991.

Lewis C. Jorgenson, State's Atty., Devils Lake, for plaintiff and appellee. No appearance.

Douglas L. Broden (argued), of Broden & Broden, Devils Lake, for defendant and appellant.

GIERKE, Justice.

Terrance Hook appeals from judgments of conviction for driving while under the influence of alcohol, fleeing or attempting to flee a peace officer, and driving when his driving privileges were revoked. We affirm.

On April 7, 1989, North Dakota highway patrolman Gerald Buchli observed an automobile speeding on U.S. Highway 20 approximately three miles south of Devils Lake in Ramsey County. Buchli activated the overhead lights on his squad car and pursued the automobile as it entered the boundaries of the Devils Lake Sioux Indian Reservation where police officers for the Bureau of Indian Affairs stopped it at a roadblock. Buchli immediately arrived at the roadblock and approached the vehicle. He arrested the driver and took him directly to the Law Enforcement Center in Devils Lake without turning him over to the Bureau of Indian Affairs or following the Tribe's extradition procedures. Buchli subsequently identified the driver as Terrance Hook, an enrolled member of the Devils Lake Sioux Tribe, and ascertained that Hook's North Dakota driving privileges were revoked. Hook submitted to a blood alcohol test, and the results of that test indicated that he had a blood alcohol concentration of .13 percent.

Hook was charged with driving while under the influence of alcohol, fleeing or attempting to elude a police officer, and driving when his driving privileges were revoked. Hook moved to suppress the evidence obtained after he was arrested, contending that Buchli did not have jurisdiction to arrest him on the reservation in violation of the Tribe's extradition procedures.

Relying upon principles from *Fournier v. Roed*, 161 N.W.2d 458 (N.D.1968), and *Organized Village of Kake v. Egan*, 369 U.S. 60, 82 S.Ct. 562, 7 L.Ed.2d 573 (1962), and rejecting the rationale of the majority of our court in *State v. Lohnes*, 69 N.W.2d

508 (N.D.1955), the trial court denied Hook's motion. The court concluded that the arrest was legal because under the Act of May 31, 1946, ch. 279, 60 Stat. 229,[1] Congress intended to give the State criminal jurisdiction over misdemeanors committed by members of the tribe on the Devils Lake Sioux Indian Reservation. Hook entered a conditional plea of guilty to all of the charges pursuant to Rule 11(a)(2), N.D.R.Crim.P., and he has appealed.

Relying upon *State v. Lohnes,* 69 N.W.2d 508 (N.D.1955), Hook contends that he was illegally arrested because the State does not have criminal jurisdiction over Sioux tribal members on the reservation for crimes committed off the reservation. Hook asserts that the fresh pursuit doctrine does not justify the arrest because the State did not comply with the Tribe's extradition procedures and the Tribe has not granted the State authority to enter the reservation in pursuit of persons suspected of misdemeanors. Hook thus contends that the trial court erred in not suppressing the evidence obtained as a result of his arrest.

The State responds that Hook's arrest was legal because the State has criminal jurisdiction over misdemeanors committed on the Devils Lake Sioux Indian Reservation under 60 Stat. 229 (1946). *See* n. 1. The State argues that in *State v. Lohnes, supra,* a majority of our court misconstrued the provisions for disclaimer of governmental control of Indian lands in North Dakota's enabling act and our original constitution and should be overruled.

■ Generally, a valid arrest may not be made outside the territorial jurisdiction of the arresting authority. 50 Am.Jur.2d, *Arrest,* § 50 (1962); 34 A.L.R.4th 328, *Validity, In State Criminal Trial, Of Arrest Without Warrant By Identified Police Officer Outside of Jurisdiction, When Not in Fresh Pursuit,* § 2 (1984); F. Cohen, *Handbook of Federal Indian Law,* p. 357 (1982). We therefore initially consider whether the State has criminal jurisdiction over offenses committed on the Devils Lake Sioux Indian Reservation.

■ The allocation of criminal jurisdiction in Indian country[2] is governed by "a complex patchwork of federal, state, and tribal law." *Duro v. Reina,* 495 U.S. 676, —— n. 1, 110 S.Ct. 2053, 2057 n. 1, 109 L.Ed.2d 693, 700 n. 1 (1990).[3] *See* F. Co-

1. Act of May 31, 1946, ch. 279, 60 Stat. 229, provides:

   "[J]urisdiction is hereby conferred on the State of North Dakota over offenses committed by or against Indians on the Devils Lake Indian Reservation in North Dakota to the same extent as its courts have jurisdiction generally over offenses committed within said State outside of Indian reservations: *Provided, however,* That nothing herein contained shall deprive the courts of the United States of jurisdiction over offenses defined by the laws of the United States committed by or against Indians on said reservation, nor shall anything herein contained deprive any Indian of any protection afforded by Federal law, contract, or treaty against the taxation or alienation of any restricted property."

2. 18 USCS § 1151 defines Indian country:

   "*§ 1151. Indian country defined*
   "Except as otherwise provided in sections 1154 and 1156 of this title [18 USCS §§ 1154 and 1156], the term 'Indian country', as used in this chapter [18 USCS §§ 1151 et seq.], means (a) all land within the limits of any Indian reservation under the jurisdiction of the United States Government, notwithstanding the issuance of any patent, and, including

   rights-of-way running through the reservation, (b) all dependent Indian communities within the borders of the United States whether within the original or subsequently acquired territory thereof, and whether within or without the limits of a state, and (c) all Indian allotments, the Indian titles to which have not been extinguished, including rights-of-way running through the same."

3. In *Duro v. Reina,* 495 U.S. 676, —— n. 1, 110 S.Ct. 2053, 2057 n. 1, 109 L.Ed.2d 693, 700 n. 1 (1990), the United States Supreme Court summarized the allocation of criminal jurisdiction in Indian country:

   "For enumerated major felonies, such as murder, rape, assault, and robbery, federal jurisdiction over crime committed by an Indian is provided by 18 USC § 1153 [18 USCS § 1153], commonly known as the Major Crimes Act, which, as amended in 1986, states:

   " '(a) Any Indian who commits against the person or property of another Indian or other person any of the following offenses, namely, murder, manslaughter, kidnapping, maiming, a felony under chapter 109A, incest, assault with intent to commit murder, assault with a dangerous weapon, assault resulting in serious bodily injury, arson, burglary, robbery,

hen, *supra,* at ch. 6. However, the primary source of criminal jurisdiction in Indian country is federal law. F. Cohen, *supra,* at p. 282. It is well established that "absent governing Acts of Congress, the question has always been whether the state action infringed on the right of reservation Indians to make their own laws and be ruled by them." *Williams v. Lee,* 358 U.S. 217, 220, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959). *See also Rice v. Rehner,* 463 U.S. 713, 103 S.Ct. 3291, 77 L.Ed.2d 961 (1983); *Washington v. Confederated Bands and Tribes of Yakima Indian Nation,* 439 U.S. 463, 99 S.Ct. 740, 58 L.Ed.2d 740 (1979); *United States v. Wheeler,* 435 U.S. 313, 98 S.Ct. 1079, 55 L.Ed.2d 303 (1978); *Oliphant v. Suquamish Indian Tribe,* 435 U.S. 191, 98 S.Ct. 1011, 55 L.Ed.2d 209 (1978); *Worcester v. Georgia,* 31 U.S. 515, 6 Pet. 515, 8 L.Ed. 483 (1832). The unique and limited sovereignty that Indian tribes retain is subject to complete defeasance by Congress. *Rice v. Rehner, supra; United States v. Wheeler, supra.* The principles announced in those decisions establish a general framework that states do not have criminal jurisdiction over Indians on an Indian reservation unless allowed by Congress.

■ Under those principles, we examine *State v. Lohnes, supra,* our 1955 decision involving state criminal jurisdiction on the Devils Lake Sioux Reservation under 60 Stat. 229 (1946). *See* n. 1. In *Lohnes,* a majority of our court traced the history of Indian jurisdiction in North Dakota and held that the State did not have criminal jurisdiction over an enrolled member of the Devils Lake Sioux Tribe for assault and battery allegedly committed upon another

and a felony under section 661 of this title within the Indian country, shall be subject to the same law and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States.'

" '(b) Any offense referred to in subsection (a) of this section that is not defined and punished by federal law in force within the exclusive jurisdiction of the United States shall be defined and punished in accordance with the laws of the State in which such offense was committed as are in force at the time of such offense.'

"It remains an open question whether jurisdiction under § 1153 over crimes committed by Indian tribe members is exclusive of tribal jurisdiction. See United States v Wheeler, 435 US 313, 325, n 22, 55 L Ed 2d 303, 98 S Ct 1079 (1978).

"Another federal statute, the Indian Country Crimes Act, 18 USC § 1152 [18 USCS § 1152], applies the general laws of the United States to crimes committed in Indian country:

" 'Except as otherwise expressly provided by law, the general laws of the United States as to the punishment of offenses committed in any place within the sole and exclusive jurisdiction of the United States, except the District of Columbia, shall extend to the Indian country.'

"The general law of the United States may assimilate state law in the absence of an applicable federal statute. 18 USC § 13 [18 USCS § 13]. Section 1152 also contains the following exemptions:

" 'This section shall not extend to offenses committed by one Indian against the person or property of another Indian, nor to any Indian committing any offense in the Indian country who has been punished by the local law of the tribe, or to any case where, by treaty stipulations, the exclusive jurisdiction over such offenses is or may be secured to the Indian tribes respectively.'

"For Indian country crimes involving only non-Indians, longstanding precedents of this Court hold that state courts have exclusive jurisdiction despite the terms of § 1152. See New York ex rel Ray v Martin, 326 US 496, 90 L Ed 261, 66 S Ct 307 (1946); United States v McBratney, 104 US 621, 26 L Ed 869 (1882). Certain States may also assume jurisdiction over Indian country crime with the consent of the affected Tribe pursuant to Public Law 280, Act of Aug. 15, 1953, ch 505, 67 Stat 588 (codified as amended at 18 USC § 1162 [18 USCS § 1162], 25 USC §§ 1321–1326 [25 USCS §§ 1321–1326], 28 USC § 1360 [28 USCS § 1360] ).

"The final source of criminal jurisdiction in Indian country is the retained sovereignty of the tribes themselves. It is undisputed that the tribes retain jurisdiction over their members, subject to the question of exclusive jurisdiction under § 1153 mentioned above. See United States v Wheeler, supra. The extent of tribal jurisdiction over non-members is at issue here. For a scholarly discussion of Indian country jurisdiction, see Clinton, Criminal Jurisdiction Over Indian Lands: A Journey Through a Jurisdictional Maze, 18 Ariz L Rev 505 (1976)."

These sources indicate that the allocation of jurisdiction over crimes in Indian country among the federal, tribal, and state governments depends upon the classification of the offense and whether or not the accused or the victim are Indians. *See generally* F. Cohen, *supra,* at Chapter 6.

Indian on reservation land. The majority said that the intent of the disclaimer in North Dakota's Enabling Act, Act of February 22, 1889, ch. 180, § 4, 25 Stat. 676, 677, and original constitution, Art. XVI, § 203, N.D.Const. (1889),[4] was to make the Indians the responsibility of the United States and to give the United States complete control over the Indians and their lands until that obligation was fulfilled. Relying upon the disclaimer language, the majority concluded that it created a compact between the United States and the State of North Dakota which could not be revoked without the consent of both. The majority held that because the State of North Dakota had not consented to the jurisdiction given by 60 Stat. 229 (1946), that statute did not give North Dakota criminal jurisdiction over crimes committed by Indians on the Devils Lake Sioux Reservation.

The dissent said that the disclaimer language was not territorial and declined to construe that language to disclaim the sovereign police powers of the state to enforce its criminal laws whenever or wherever Congress had relinquished jurisdiction to the state:

"The federal criminal jurisdiction exercised over Indians in North Dakota by the federal government is based on the status of Indians as such rather than upon the lands on which they reside. When that jurisdiction is relinquished it falls to the state which has general criminal jurisdiction within its borders." *State v. Lohnes, supra,* 69 N.W.2d at 521 (Morris, J., dissenting).

The dissent concluded:

"that the provisions of the Enabling Act and our constitutional disclaimer have no effect whatever upon the criminal jurisdiction of the state; that the state has general jurisdiction over reservations wholly within the state, excluding however, that jurisdiction which has been retained by the federal government over 'Indian country' as long and only as long as that jurisdiction is asserted by the

federal government and when the federal government cedes or confers criminal jurisdiction over Indian country to the state the federal restraint on the state's jurisdiction is removed and to the extent of that removal the jurisdiction of the state is automatically extended." *State v. Lohnes, supra,* 69 N.W.2d at 522 (Morris, J., dissenting).

A recognized Indian law scholar has questioned the analysis of the majority in *Lohnes:*

"The North Dakota court reasoned that the disclaimer was adopted under a federal-state compact, so it could not be altered without state consent. The court determined that state consent would have required a state constitutional amendment. The premise that the disclaimer was part of a compact was correct. . . .

"But it does not follow that state consent is necessary to alter the compact. Congress probably has power to withdraw Indian country preemption under the Supremacy Clause without state consent regardless of any compact. The correct inquiry was whether Congress intended to break the compact and require state jurisdiction without state consent." F. Cohen, *supra,* at 374, n. 229.

We agree that the correct inquiry is to ascertain the intent of Congress. A determination of congressional intent is consistent with the principles underlying the Supreme Court's preemption analysis for determining jurisdiction in cases involving Indians. *Three Affiliated Tribes of the Fort Berthold Reservation v. Wold Engineering,* 476 U.S. 877, 106 S.Ct. 2305, 90 L.Ed.2d 881 (1986); *Rice v. Rehner,* 463 U.S. 713, 103 S.Ct. 3291, 77 L.Ed.2d 961 (1983); *New Mexico v. Mescalero Apache Tribe,* 462 U.S. 324, 103 S.Ct. 2378, 76 L.Ed.2d 611 (1983); *White Mountain Apache Tribe v. Bracker,* 448 U.S. 136, 100 S.Ct. 2578, 65 L.Ed.2d 665 (1980).

Subject to the restrictions in the second clause of 60 Stat. 229 (1946), the first clause of that statute unambiguously con-

---

**4.** That disclaimer language provided that "Indian lands shall remain under the absolute juris-diction and control of the Congress of the United States."

fers jurisdiction on the State of North Dakota over offenses committed by or against Indians on the Devils Lake Indian Reservation.[5] Subject to those restrictions we believe that statute shows a clear congressional intent to confer state criminal jurisdiction over offenses by or against Indians on the Devils Lake Indian Reservation.

Moreover, decisions after *Lohnes* which have construed disclaimer language identi-

5. The sparse congressional history available for the 1946 Act indicates that the Devils Lake Sioux Tribe requested that Act because the status of state criminal jurisdiction over the Devils Lake Sioux Tribe was "confused." A letter from Acting Secretary of Interior Abe Fortas to the Speaker of the House and President of the Senate provides:

"I am enclosing a draft of a bill to confer jurisdiction on the State of North Dakota over offenses committed by or against Indians on the Devils Lake Indian Reservation in that State, and I ask that this proposed bill be placed before the Senate for favorable consideration.

"The Indians of the Devils Lake Reservation received allotments of land in severalty pursuant to the General Allotment Act of February 8, 1887 (24 Stat. 388). A majority of the allotments were approved November 2, 1892, for which the usual 25–year trust patents were issued on June 11, 1893, in most cases. Section 6 of that act provides, in part:

" 'That upon the completion of said allotments and the patenting of the lands to said allottees, each and every member of the respective bands or tribes of Indians to whom allotments have been made shall have the benefit of and be subject to the laws, both civil and criminal, of the State or Territory in which they may reside; * * *.'

"Evidently in pursuance of the above provision of law, the courts of the State of North Dakota have for many years assumed jurisdiction over offenses committed by Indians on the Devils Lake Indian Reservation. That legislative provision has never been repealed, but it was amended by the act of May 8, 1906 (34 Stat. 182), so as to read:

" 'That at the expiration of the trust period and when the lands have been conveyed to the Indians by patent in fee, as provided in section 5 of this act, then each and every allottee shall have the benefit of and be subject to the laws, both civil and criminal, of the State or Territory in which they may reside; * * *.'

"The amendatory act also authorized the issuance of patents in fee simple to allottees and included a proviso, 'That until the issuance of fee simple patents *all allottees to whom trust patents shall hereafter be issued* shall be subject to the exclusive jurisdiction of the United States.' [Italic added.] The amendments in the act of May 8, 1906, however, were not made retroactive.

"Patents in fee simple for approximately 60 percent of the allotments at Devils Lake have heretofore been issued, mostly many years ago. Jurisdiction over such fee-patented Indi-

ans is in the State whether they received their allotments before or after the amendment of May 8, 1906.

"Those Indians who received their trust patents after May 8, 1906, would not come within the above-mentioned provision of the 1887 act extending the State laws over allotted Indians. Another class of Indians there is composed of the Indian descendants of the Indians who were allotted and became subject to State laws under the 1887 act. Still another possible class would be those other Indians if any, who never received allotments under the 1887 act either before or after its amendment by the act of May 8, 1906, supra.

"No tribal court of Indian offenses has been maintained on the reservation for many years. A few years ago consideration was given to a proposal that an Indian court be established for these Indians, but it was discarded because it appeared that they had been conforming with the laws of North Dakota for more than 40 years and offenders have been prosecuted in State courts; that they are familiar with the State laws and procedures and are desirous of having access to the State courts; that both the county and district courts are very sympathetic toward Indians and mete out sentences that take cognizance of the adjustments these people are making to conform with the white man's law; that Indians are given the choice of serving their sentences in the county jail, or at the agency jail; and that all of their rights and civil liberties are accorded them.

"In view of the foregoing, the status of jurisdiction over these Indians for the prosecution of criminal offenses is somewhat confused, and questions have arisen which indicate the need of legislation to clarify the matter.

"Under date of April 14, 1944, the Devils Lake Sioux Tribe adopted a resolution indicating its desire to have the State courts continue the exercise of jurisdiction over criminal offenses committed on the reservation. A copy of that resolution is herewith submitted.

"The enclosed draft of proposed legislation is therefore submitted to fix in one place criminal jurisdiction over all the above-mentioned different classes of Indians of the Devils Lake Reservation, and to assure these Indians that they will continue to be subject to the same laws and courts as other citizens and residents of the State. The language follows that of the act of June 8, 1940 (54 Stat. 249), conferring jurisdiction on the State of Kansas over Indians of the State of Kansas. I recommend early and favorable action on the measure."

cal to that in our enabling act and original constitution support the conclusion that consent of the State of North Dakota was not necessary to receive the jurisdiction given by 60 Stat. 229 (1946). In *Organized Village of Kake v. Egan,* 369 U.S. 60, 82 S.Ct. 562, 7 L.Ed.2d 573 (1962), the Supreme Court considered the effect of disclaimer language in the Statehood Act for Alaska which was similar to the disclaimer language in nine prior statehood acts, including North Dakota. After observing that caselaw from Arizona and Montana, two states with identical enabling acts, indicated that "absolute" federal jurisdiction was not exclusive jurisdiction [*Williams v. Lee,* 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959); *Draper v. United States,* 164 U.S. 240, 17 S.Ct. 107, 41 L.Ed. 419 (1896)] the Court said that the "momentum of substantially identical past admission legislation touching Indians carries the settled meaning governing the jurisdiction of States over Indian property to the Alaska Statehood Act." *Kake, supra,* 369 U.S. at 68, 82 S.Ct. at 567. The Court quoted the following congressional history for the disclaimer language and said that the disclaimer language was not intended to completely oust the State from regulation of Indian land:

> "Mr. Barney denied that the provision would deprive the State of 'political jurisdiction' over disclaimed properties. Senator Cordon declared:
>
> " 'The State may well waive its claim to any right or title to the lands and still have all of its political or police power with respect to the actions of people on those lands, as long as that does not affect the title to the land.'
>
> "Senator Jackson said: 'All that you are doing here is a disclaimer of proprietary interest,' and Mr. Barney agreed. Senator Cordon said:
>
> " 'The act of admission gives to the State of Alaska political jurisdiction, including all that is meant by the term "police power," within its boundaries unless there be express or definitely implied, which is the same thing, a reservation of exclusive jurisdiction in the Unit-

ed States.' " *Kake, supra,* 369 U.S. at 69–70, 82 S.Ct. at 568, 7 L.Ed.2d at 580.

The Court concluded that the disclaimer language was a disclaimer of a proprietary interest in the land itself and not a disclaimer of a governmental or political interest. The proprietary-governmental distinction in *Kake* has been followed by other jurisdictions with disclaimer language similar to North Dakota. *Sangre De Cristo Development Corp., Inc. v. City of Santa Fe,* 84 N.M. 343, 503 P.2d 323 (1972), *cert. denied,* 411 U.S. 938, 93 S.Ct. 1900, 36 L.Ed.2d 400 (1973); *State ex rel. Iron Bear v. District Court,* 162 Mont. 335, 512 P.2d 1292 (1973); *Francisco v. State,* 113 Ariz. 427, 556 P.2d 1 (1976).

In *Fournier v. Roed,* 161 N.W.2d 458 (N.D.1968), we relied primarily upon *Kake* and held that the State's warrantless arrest of an enrolled member of the Devils Lake Sioux Tribe on the reservation for a felony committed off the reservation did not deprive the Indian of his rights under the constitution, laws, or treaties of the United States and did not entitle the Indian to release from custody under a writ of habeas corpus. We noted that absent a congressional enactment, the question was whether the state action infringed on the right of the Indian reservation to make its own rules and be ruled by them, and we said:

> "[W]e believe that our law should apply, as the arrest did not interfere with the reservation self-government nor impair any right granted or reserved to the petitioner by federal law or treaty." *Fournier, supra,* 161 N.W.2d at 467.

*Kake* and *Fournier* essentially followed the dissent's rationale in *Lohnes.* Under that rationale, North Dakota's enabling act and original constitution required the state to disclaim a proprietary interest in Indian land but not a governmental or political interest. We believe that the analysis of the majority in *Lohnes* misconstrued the provisions of our enabling act and original constitution regarding the necessity of state consent for the assertion of criminal jurisdiction over the Devils Lake Sioux Indian Reservation. Rather, we believe the

correct focus is on congressional intent, and pursuant to the unambiguous language of 60 Stat. 229 (1946), we conclude that that statute gave the State criminal jurisdiction over the non-major offenses committed by or against Indians on the Devils Lake Indian Reservation.[6]

Although Hook contends that state jurisdiction would interfere with tribal sovereignty because the Tribe has an extradition procedure,[7] a tribe's unique and limited sovereignty is subject to complete defeasance by Congress. *Rice v. Rehner, supra; United States v. Wheeler, supra.* Congress may withdraw some aspects of tribal sovereignty. In this case, 60 Stat. 229 (1946) gave the State criminal jurisdiction over the Devils Lake Indian Reservation. *Compare State v. Spotted Horse,* 462 N.W.2d 463 (S.D.1990). Because the federal statute gives the State criminal jurisdiction over the non-major offenses committed by or against Indians on the Devils Lake Indian Reservation, we conclude that Hook was arrested legally and that the trial court did not err in denying his motion to suppress the evidence.

The judgments of conviction are affirmed.

GRAFF, District Judge, MESCHKE, Acting C.J., and VANDE WALLE, JJ., concur.

GRAFF, District Judge, sitting in place of ERICKSTAD, C.J., disqualified.

LEVINE, Justice, dissenting.

In support of my dissent, I take a page out of the book of the majority in *Wiederholt v. Dept. of Transp.,* 462 N.W.2d 445 (N.D.1990). There, the majority concluded that the failure of the legislature to amend a statute which we had interpreted in a manner most likely contrary to the clearly expressed intent of the legislature, was an indication that the legislature was satisfied with our interpretation. So, too, if the *Lohnes* majority misconstrued 60 Stat. 229 (1946) and the provisions for disclaimer of governmental control of Indian lands in North Dakota's enabling act, that misconstruction has been the law in our state for over thirty-five years. To my knowledge, Congress has done nothing to indicate its displeasure with either our interpretation of its statutes or our deference to Indian sovereignty. No congressional enactments have declared our error and, indeed, it could be said that the *Lohnes* majority was prescient in anticipating and implementing what would become a national policy of promoting and nurturing Indian self-government and sovereignty.

Because our interpretation in *Lohnes* is so congenial with the long-standing congressional policy of autonomy and self-determination of Indian nations, we should uphold it and preserve the needs of stability in our legal system. Stare decisis is a reasonable credo in these circumstances. I would follow *Lohnes* and reverse the judgments of conviction.

I, therefore, respectfully dissent.

---

6. This case involves only misdemeanors and we express no opinion on the allocation of jurisdiction for more serious crimes. However, we observe that other congressional enactments may limit jurisdiction. *See generally* n. 2 and *Iowa Tribe of Indians v. State of Kansas,* 787 F.2d 1434 (10th Cir.1986); *Youngbear v. Brewer,* 415 F.Supp. 807 (N.D.Iowa 1976), aff'd, 549 F.2d 74 (8th Cir.1977).

7. During oral argument we were informed by counsel for Hook that he notified the Tribe about this proceeding. However, the Tribe has not appeared to advance its interests.