FILED
United States Court of Appeals
Tenth Circuit

April 11, 2011

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff–Appellee,

v.

ROBERT M. LANGFORD,

      Defendant–Appellant.

No. 10-6070

**Appeal from the United States District Court
for the Western District of Oklahoma
(D.C. No. 5:09-CR-00327-M-1)**

Howard A. Pincus (Raymond P. Moore, Federal Public Defender with him on the briefs), Office of the Federal Public Defender, Denver, Colorado for the Defendant–Appellant.

Linda A. Epperley (Sheldon J. Sperling, U.S. Attorney with her on the briefs), Office of the United States Attorney, Muskogee, Oklahoma for the Plaintiff–Appellee.

Before **KELLY**, **HOLLOWAY**, and **LUCERO**, Circuit Judges.

**LUCERO**, Circuit Judge.

      Robert Langford appeals his conviction for being a spectator at a cockfight under

18 U.S.C. §§ 13, 1151, and 1152, applying Okla. Stat. tit. 21, § 1692.6.  We conclude that

federal courts do not have authority over victimless crimes committed by non-Indians in Indian country. Reviewing the district court's determination under 28 U.S.C. § 1291, we vacate Langford's conviction and remand for the criminal information to be dismissed with prejudice.

## I

On July 22, 2006, approximately sixty law enforcement officers from the Federal Bureau of Investigation, Bureau of Indian Affairs, Immigration and Customs Enforcement, United States Department of Agriculture, and Oklahoma Highway Patrol raided the T.F.C. cockfighting facility in rural Oklahoma. The cockfighting facility was located on property held in trust by the United States for a Kiowa allottee, and is therefore in Indian country. See 18 U.S.C. § 1151(c). Of the approximately seventy people cited during the raid, between five and seven were Indian. Everyone else, including Langford, were non-Indian.

Langford was charged in federal court under the Assimilative Crimes Act, 18 U.S.C. § 13, as applied through the Indian Country Crimes Act, § 1152 ("ICCA" or "§ 1152"). The state offense assimilated into federal law criminalizes being a spectator at a place where a cockfight is occurring. Okla. Stat. tit. 21, § 1692.6.

No allegation regarding Langford's Indian status was made in the information, nor was there any proof at trial that Langford was Indian. The only testimony on the matter at trial indicated Langford is non-Indian.

Following a trial before a magistrate judge, a jury convicted Langford, and his

conviction was affirmed by the district court.  He timely appealed.

## II

"[T]he Indian/non-Indian statuses of the victim and the defendant are essential elements" of any crime charged under 18 U.S.C. § 1152.  United States v. Prentiss, 256 F.3d 971, 980 (10th Cir. 2001) (en banc) overruled in part on other grounds as recognized by United States v. Sinks, 473 F.3d 1315, 1321 (10th Cir. 2007).  The failure of an indictment to allege this essential element, when raised for the first time on appeal, is reviewed for plain error.  Sinks, 473 F.3d at 1321.  To show plain error, a defendant must demonstrate:  "(1) an error, (2) that is plain, (3) that affects substantial rights, and (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings."  Id. (quotation and alteration omitted).

In this case, the distinction between plain error review and de novo review is academic because the government did not merely fail to allege Langford's Indian status as an element of the crime.  Rather, it failed to produce any evidence whatsoever of Langford's Indian status.  As in cases challenging the sufficiency of the evidence, a conviction in the absence of any allegation or any evidence of an essential element,

> is plainly an error, clearly prejudiced the defendant, and almost always creates manifest injustice.  Therefore, plain error review and de novo review are functionally equivalent so long as the fourth prong of plain error review—that the error seriously affects the fairness, integrity, or public reputation of judicial proceedings—is also met.

United States v. Kaufman, 546 F.3d 1242, 1247 (10th Cir. 2008).

-3-

## III

### A

The Assimilative Crimes Act provides that:

Whoever within or upon any of the places now existing or hereafter reserved or acquired as provided in section 7 of this title, [which defines the territorial jurisdiction of the United States,] or on, above, or below any portion of the territorial sea of the United States not within the jurisdiction of any State, Commonwealth, territory, possession, or district is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State, Territory, Possession, or District in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment.

18 U.S. C. § 13(a). The ICCA provides in relevant part that "[e]xcept as otherwise expressly provided by law, the general laws of the United States as to the punishment of offenses committed in any place within the sole and exclusive jurisdiction of the United States, except the District of Columbia, shall extend to the Indian country." 18 U.S.C. § 1152. Thus, in conjunction, these statutes: (1) assimilate state criminal law into federal law with respect to acts committed in territories of federal jurisdiction; and (2) apply these assimilated state crimes to acts committed in Indian country.

The assimilated state crime in this case is being "knowingly present as a spectator at any place, building, or other site where preparations are being made for a cockfight with the intent to be present at such preparation or cockfight, or [being] knowingly present at such cockfight." Okla. Stat. tit. 21, § 1692.6.

**B**

There is no dispute that the conduct at issue in this case, watching a cockfight, occurred in Indian country. Nor is there any dispute that Langford is a non-Indian. The only issue is whether there is federal jurisdiction[1] for a victimless crime, perpetrated by a non-Indian in Indian country. This is a question of first impression, but the answer is clear. There is no jurisdiction. The states possess exclusive criminal jurisdiction over crimes occurring in Indian country if there is neither an Indian victim, nor an Indian perpetrator.

Our conclusion flows ineluctably from Supreme Court precedent. Despite the plain language of 18 U.S.C. § 1152 and its predecessor statutes, the Court has consistently and clearly held that federal jurisdiction over crimes in Indian country is contingent upon the existence of either an Indian victim or perpetrator. This rule was first articulated in United States v. McBratney, 104 U.S. 621 (1881). In McBratney, the Supreme Court considered whether federal courts had jurisdiction to punish a homicide of one white man by another on the Ute reservation in Colorado. Id. at 621. Notwithstanding the seemingly contrary plain language of two statutes which appears to compel the opposite result, the Court held that Colorado possessed exclusive jurisdiction over the crime. Id. at 623-24. The first statute granted federal jurisdiction over murder

---

[1] When we speak of jurisdiction, we mean sovereign authority, not subject matter jurisdiction. Cf. Prentiss, 206 F. 3d at 982 (disclaiming the application of subject matter jurisdiction analysis to cases involving an inquiry under the ICCA). This is consistent with use of the term in United States v. McBratney, 104 U.S. 621, 623-4 (1881).

-5-

committed within the exclusive jurisdiction of the United States. Id. at 621. The second statute, 18 U.S.C. § 2145, a predecessor to the ICCA, provided that "general laws of the United States as to the punishment of crimes committed in any place within the sole and exclusive jurisdiction of the United States, except the District of Columbia, shall extend to Indian country." McBratney, 104 U.S. at 621-622.

In order to get past these statutes, the Court created an exception premised upon the sovereign equality of the individual states. It reasoned that Colorado entered into the United States "upon an equal footing with the original States in all respects whatsoever . . . [and consequently] has acquired criminal jurisdiction over its own citizens and other white persons throughout the whole of the territory within its limits." Id. at 624. Absent a specific treaty provision between the Utes and the United States stipulating for "the punishment of offences committed by white men against white men" the federal courts lacked jurisdiction to punish such crimes within the reservation. Id.

The Supreme Court has consistently reaffirmed the "equal footing" holding of McBratney. It first did so in United States v. Draper, 164 U.S. 240, 242 (1896). Montana's enabling act stated that "Indian lands shall remain under the absolute and exclusive jurisdiction and control of the [C]ongress of the United States." Id. at 244. Despite this language, the Court held that Montana had exclusive jurisdiction over the murder of a non-Indian by a non-Indian on the Crow reservation. Id. at 247.

In People v. Martin, 326 U.S. 496 (1946), a non-Indian challenged his New York conviction for the murder of another non-Indian within the Allegheny Reservation on the

-6-

grounds that the federal courts had exclusive jurisdiction over his crime. Martin's argument generally mirrored Draper's, but he also argued that the presence of an "equal footing" provision in Colorado's enabling statute distinguished his case from McBratney, because New York was one of the original states. The Court rejected this argument because "[t]he fact that Colorado was put on an equal footing with the original states obviously did not give it any greater power than New York." Martin, 326 U.S. at 499. It further reasoned that "[w]hile Section 2145 of the Revised Statutes has been held applicable in territories to crimes between whites and whites which do not affect Indians, the McBratney line of decisions stands for the proposition that States, by virtue of their statehood, have jurisdiction over such crimes notwithstanding Section 2145." Martin, 326 U.S. at 500.

Of particular relevance, in United States v. Ramsey, 271 U.S. 467, 469 (1926), the Court observed that with respect to Oklahoma "[t]he authority of the United States under [S]ection 2145 to punish crimes occurred within the state of Oklahoma, not committed by or against Indians, was ended by the grant of statehood."[2]

The McBratney line of cases restricts not only the scope of federal jurisdiction under § 2145, but also under the statute at issue in this case. This court has noted that the jurisdictional provisions of § 2145 and its successor statute, the ICCA, are "nearly

---

[2] "We are bound by Supreme Court dicta almost as firmly as by the Court's outright holdings." United States v. Serawpo, 505 F.3d 1112, 1122 (10th Cir. 2007) (quotation omitted).

identical." Prentiss, 256 F.3d at 975 n.3. Citing McBratney and Martin, the Supreme Court has observed that with respect to "Indian country crimes involving only non-Indians, longstanding precedents of this Court hold that state courts have exclusive jurisdiction despite the terms of § 1152." Duro v. Reina, 495 U.S. 676, 680 n.1 (1990), superseded in other respects by statute, 25 U.S.C. § 1301; see also, United States v. Antelope, 430 U.S. 641, 643 n.2 (1977) (observing, with respect to the ICCA, "[n]ot all crimes committed within Indian country are subject to federal or tribal jurisdiction . . . [u]nder [McBratney], a non-Indian charged with committing crimes against other non-Indians in Indian country is subject to prosecution under state law").

The Supreme Court has not directly considered the issue of whether the federal courts possess jurisdiction over victimless crimes committed by non-Indians on Indian land. However, the Court has suggested in dicta that the McBratney rule applies to victimless crimes as well. The Court summarized the delimitation of state and federal jurisdiction over crimes in Indian country in Solem v. Bartlett, 465 U.S. 463 (1984). "Within Indian country, State jurisdiction is limited to crimes by non-Indians against non-Indians, and victimless crimes by non-Indians." Id. at 465 n.2 (citing Martin, 326 U.S. 496); see Ross v. Neff, 905 F.2d 1349, 1353 (10th Cir. 1990) (noting the "Supreme Court has expressly stated that state criminal jurisdiction in Indian country is limited to crimes committed 'by non-Indians against non-Indians . . . and victimless crimes by non-Indians'") (quoting Solem, 465 U.S. at 465 n.2). The absence of federal jurisdiction over

-8-

victimless crimes perpetrated by a non-Indian in Indian country is explicit in the dicta of

Solem and implicit in the holding of McBratney.[3]

C

Although the McBratney line of cases establishes that the states, not the federal

government, possess exclusive jurisdiction over non-Indian perpetrators of victimless

crimes, the Oklahoma Constitution appears to disclaim any state jurisdiction over crimes

committed in Indian country.  Article I, Section 3 of the Oklahoma Constitution provides:

> The people inhabiting the State do agree and declare that they forever
> disclaim all right and title in or to any unappropriated public lands lying
> within the boundaries thereof, and to all lands lying within said limits
> owned or held by any Indian, tribe, or nation; and that until the title to any
> such public land shall have been extinguished by the United States, the
> same shall be and remain subject to the jurisdiction, disposal, and control of
> the United States.

Notwithstanding the plain text, the Oklahoma courts have construed this provision "to

disclaim jurisdiction over Indian lands only to the extent that the federal government

claimed jurisdiction."  Goforth v. State, 644 P.2d. 114, 116 (Okla. Crim. App. 1982)

(citing Currey v. Corp. Comm'n, 617 P.2d 177 (Okla. 1979)).  As the Oklahoma Court of

Criminal Appeals observed in Goforth, to construe this provision otherwise would result

in a jurisdictional vacuum in which neither the federal government (due to McBratney)

---

[3] The government should have been aware from its own internal guidelines that there was no federal jurisdiction over this offense.  See  U.S. Dep't of Justice, United States Attorneys' Manual, tit. 9-20.100, Criminal Resource Manual § 683 (1997) (noting that as a general rule states, not the federal government, have jurisdiction over victimless crimes committed by non-Indians in Indian country).

nor Oklahoma could punish crimes committed by non-Indians against non-Indians in Indian country.[4] Consequently, the Oklahoma courts have asserted jurisdiction over crimes by non-Indians in Indian country. See Goforth, 644 P.2d at 117.

## IV

Consequently, the government's failure to allege or present evidence with respect to Langford's Indian/non-Indian status constitutes plain error. See Kaufman, 546 F.3d at 1263 (a conviction in the absence of evidence to prove an essential element is plain error).

Although the government contends that Langford's status as a non-Indian is a "technicality," the foregoing discussion demonstrates it is in fact an essential element of a crime under the ICCA. Unlike in United States v. Goode, 483 F.3d 676, 682 (10th Cir. 2007), the alleged evidentiary insufficiency "could [not] have been quickly cured" at trial. As the government concedes in its brief, Langford is a non-Indian. The government presented no evidence that he is an Indian, nor any evidence that he victimized any Indian. Thus, this error affects the "fairness, integrity, or public reputation of judicial proceedings." Kaufman, 546 F.3d at 1263.

We conclude by emphasizing that our holding does not create a "safe haven" for "fanatic cockfighters" as the government contends. The State of Oklahoma has

---

[4] Nor, under Oliphant v. Suquamish Indian Tribe, 435 U.S. 191 (1990), would the tribe have authority to prosecute non-Indian criminals committing crimes on tribal lands.

jurisdiction to prosecute victimless crimes, such as cockfighting, committed in Indian country by a non-Indian.

## V

Because the United States lacks jurisdiction over Langford's conduct, we **VACATE** his conviction and **REMAND** to the district court so that the information may be dismissed with prejudice.  Appellant's motion to supplement the record is **DENIED**.