**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 4, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

_____

ALEX WARREN KLINGLER,

Petitioner - Appellant,

v.

CARRIE BRIDGES, Warden,

Respondent - Appellee.

No. 25-6068
(D.C. No. 5:23-CV-00721-PRW)
(W.D. Okla.)

_____

### ORDER DENYING CERTIFICATE OF APPEALABILITY[*]

_____

Before **MATHESON**, **PHILLIPS**, and **McHUGH**, Circuit Judges.

_____

Petitioner-appellant Alex Warren Klingler, proceeding pro se,[1] seeks a certificate

of appealability ("COA") to appeal the Western District of Oklahoma's denial of his

petition for habeas relief pursuant to 28 U.S.C. § 2254. Mr. Klingler also seeks to proceed

---

[*] This order is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rules of Appellate Procedure 32.1 and 10th Cir. R. 32.1.

[1] As a pro se litigant, we construe Mr. Klingler's pleadings liberally, holding them to a "less stringent standard than formal pleadings drafted by lawyers." _See Hall v. Bellmon_, 935 F.2d 1106, 1110 (10th Cir. 1991). At the same time, "this court has repeatedly insisted that pro se parties follow the same rules of procedure that govern other litigants." _Garrett v. Selby Connor Maddux & Janer_, 425 F.3d 836, 840 (10th Cir. 2005) (quotation marks omitted). As such, "the court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record." _Id._

in forma pauperis ("IFP") on appeal. We deny a COA and dismiss this matter. We also deny Mr. Klingler's request to proceed IFP on appeal.

## I.    BACKGROUND

Mr. Klingler had an arrangement in which he provided Katherine Gallagher with prescription medication. On September 17, 2017, Mr. Klingler and Ms. Gallagher got into a physical altercation at Mr. Klingler's home. Ms. Gallagher reported that she sustained two broken wrists from the incident and that Mr. Klingler attempted to kidnap her.

After interviewing Ms. Gallagher at the emergency room, officers from the Chickasha Police Department went to Mr. Klingler's residence to interview him regarding the altercation. The officers knocked on both the front and back doors of Mr. Klingler's residence and announced that they were from the Chickasha Police Department, but no one answered the door. The officers began working with the Oklahoma State Bureau of Investigation to obtain a warrant to search the residence, during which time they stayed at the residence and ensured that no one entered or exited the home. The warrant was later issued.

At approximately 10:49 a.m., Mr. Klingler's neighbor texted him stating, "Hey there is [sic] cops outside" and "Like in between our houses." ROA Vol. VIII at 196. At approximately 11:16 a.m., the neighbor sent a follow up message, "Oh noooo they have sat there all morning an undercover one and now a chickasha one." *Id.* Mr. Klingler's phone showed that he had read those text messages.

2

Because the search concerned a violent felony, the interim chief of police mobilized the Chickasha Police Department's Special Response Team ("SRT") to conduct the search. The SRT arrived at the residence shortly before 2:30 p.m. dressed in vests with the word "police" written in white lettering on the front and back.

At 2:27 p.m., at about the same time that the SRT arrived, Mr. Klingler sent a text message to his grandson stating, "U need hide your keys." *Id.* at 197. The grandson lived in a detached garage next to the house. At 2:32 p.m. the grandson responded, "they got a wornt [sic]." *Id.* Mr. Klingler's phone did not show that he had read this text message. Sometime after the SRT arrived, but before officers were able to secure the garage and the residence, Mr. Klingler and his grandson also spoke on the phone, although the contents of the call were not recorded.

Attempting to secure the detached garage before searching the residence, several officers approached the side door of the garage and announced their presence by yelling, "police officer, search warrant" approximately a dozen times with no response. ROA Vol. VI at 331. The officers were approximately sixty or seventy feet from Mr. Klingler's bedroom window when this occurred. Officers then attempted to break the side door to the garage open using a ram, but they could not get the door open and noted that it appeared to be blocked from the inside. Officers ultimately gained entry by breaking a sliding glass door on the opposite side of the garage and secured the garage.

Police then knocked on the front door of the residence and announced, "police officer, search warrant" multiple times—again, with no response. *Id.* at 341. Officers again used the ram until the door partially opened, and they noted that the door had been

3

barricaded shut. As officers attempted to completely open the door, Mr. Klingler began shooting at the officers from inside the residence. Mr. Klingler shot at the officers as they retreated from the front porch, and one officer was left lying severely injured on the front porch before he was able to retreat and find cover. Mr. Klingler and the SRT continued to exchange gunfire, and the Oklahoma Highway Patrol Tactical Team ("OHP Team") later arrived to relieve the SRT.

While still in the residence but after the shooting had stopped, Mr. Klingler spoke on the phone with his granddaughter, who asked him why he had shot an officer. Mr. Klingler responded that police were coming in the front door because he had gotten into a fight with Ms. Gallagher, and she filed charges against him. Eventually, officers convinced Mr. Klingler to surrender, and he exited the residence.

At trial, Mr. Klingler claimed that he had taken a medication for his back pain after Ms. Gallagher left his home at about 7:00 a.m. and again around 10:00 a.m., which made him sleepy. Mr. Klingler recalled responding to his neighbor's message that police were outside, but he claimed he looked outside and did not see anyone there. Although his phone indicated that he read it, Mr. Klingler testified that he did not recall reading the follow up message regarding there being an undercover officer and a Chickasha officer because he fell asleep.

With respect to his text message directing his grandson to hide his keys, Mr. Klingler testified that he must have sent the message in a daze and that his intention was to prevent family members and other individuals from entering the house. He stated that he did not know police officers were outside. Rather, Mr. Klingler testified that he

4

woke up when he heard someone breaking down his front door and that he did not hear anyone announce they were police officers or that they had a warrant. According to Mr. Klingler, he had been diagnosed with hearing problems and needed hearing aids but never got them because they were too expensive. He stated that he believed someone was breaking into his house, that he was afraid for his safety, and that he fired shots hoping to scare the invaders away. Mr. Klingler claimed he never saw whom he was shooting at and did not know the individuals were law enforcement until after the shooting had stopped.

An Oklahoma jury convicted Mr. Klingler of three counts of assault and battery with a deadly weapon, six counts of shooting with intent to kill, and one count of maiming. Mr. Klingler received a sentence of life imprisonment on each count, to be served consecutively. The Oklahoma Court of Criminal Appeals (OCCA) affirmed the trial court's judgments and sentences. Mr. Klingler then filed an application for state post-conviction relief, which the trial court denied. The OCCA affirmed the denial of post-conviction relief.

Mr. Klingler then filed the § 2254 petition underlying this appeal, alleging four grounds for relief: (1) the government submitted insufficient evidence to overcome his affirmative defense of justifiable use of deadly force; (2) two of Mr. Klingler's convictions were based on the same act and thus violated an Oklahoma statute prohibiting multiple punishments and the U.S. Constitution's prohibition on double jeopardy; (3) treaties between the United States and Chickasaw Nation deprived the trial court of jurisdiction to issue a search warrant or to prosecute Mr. Klingler; and

(4) appellate counsel provided ineffective assistance of counsel because they failed to raise the state court's lack of jurisdiction. Mr. Klingler raised the first two grounds on direct appeal, and the OCCA rejected them. He raised his third and fourth arguments for the first time in an application for post-conviction relief before Oklahoma's District Court of Grady County, which denied relief. Mr. Klingler appealed the district court's rejection of his jurisdictional argument, and the OCCA affirmed.

Mr. Klingler then sought habeas relief in the federal district court. On referral, the U.S. magistrate judge recommended that the trial court deny Mr. Klingler's petition for habeas relief. Mr. Klingler filed timely objections. The district court overruled the objections, adopted the report and recommendation, denied the petition, and denied Mr. Klingler a COA.

## II.    STANDARD OF REVIEW

Mr. Klingler must obtain a COA for this court to review the district court's denial of his § 2254 application. *See* 28 U.S.C. § 2253(c)(1)(A). A petitioner must make "a substantial showing of the denial of a constitutional right" to obtain a COA. § 2253(c)(2). Thus, Mr. Klingler must show that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *See United States v. Silva*, 430 F.3d 1096, 1100 (10th Cir. 2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003)).

The Antiterrorism and Effective Death Penalty Act (AEDPA) requires "deferential treatment of state court decisions" when considering a habeas petitioner's request for a

COA. *Dockins v. Hines*, 374 F.3d 935, 938 (10th Cir. 2004). When—as here—a state court has adjudicated the merits of a claim, a federal district court cannot grant habeas relief on that claim unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," *see* 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See id.* § 2254(d)(2). Our task at the COA stage is to determine whether reasonable jurists could debate the district court's decision, giving AEDPA deference to the state court. *See Miller-El*, 537 U.S. at 336.

Under the § 2254(d) standard, a federal court may not grant relief simply because it concludes in its "independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004) (quoting *Williams v. Taylor*, 529 U.S. 362, 411 (2000)). "Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 411. In addition to this deferential legal standard, the AEDPA establishes a deferential standard of review for the state court's factual findings. Specifically, the "AEDPA . . . mandates that state court factual findings are presumptively correct and may be rebutted only by 'clear and convincing evidence.'" *Saiz v. Ortiz*, 392 F.3d 1166, 1175 (10th Cir. 2004) (quoting 28 U.S.C. § 2254(e)(1)).

To obtain a COA based on the state court's incorrect legal determination, Mr. Klingler must therefore "show that the state court's ruling was so lacking in justification that there was an error well understood and comprehended in existing law

7

beyond any possibility for fairminded disagreement." *Virginia v. LeBlanc*, 582 U.S. 91, 94 (2017) (per curiam) (ellipsis omitted) (quoting *Woods v. Donald*, 575 U.S. 312, 316 (2015) (per curiam)). Furthermore, to challenge the state court's factual findings, Mr. Klingler has the burden to demonstrate by clear and convincing evidence that the state court's factual determination was incorrect. *See* 28 U.S.C. § 2254(e)(1).

In addition, because Mr. Klingler seeks to proceed IFP in this appeal, "he must demonstrate that he is financially unable to pay the requisite fees, and that there exists a reasoned, nonfrivolous argument on the law and facts in support of the issues raised on appeal." *Silva*, 430 F.3d at 1100 (internal quotation marks omitted).

## III.    DISCUSSION

In Mr. Klingler's application for a COA, he reiterated the four arguments made in his § 2254 petition before the district court, namely that (1) the State submitted insufficient evidence to overcome his affirmative defense of justifiable use of deadly force; (2) two of Mr. Klingler's convictions were based on the same act and thus violated Oklahoma law against multiple punishments as well as the U.S. and Oklahoma constitutional guarantees against double jeopardy; (3) treaties between the United States and Chickasaw Nation deprived the trial court of jurisdiction to issue a search warrant or to prosecute Mr. Klingler; and (4) counsel provided ineffective assistance because they failed to raise the state court's lack of jurisdiction. We address each argument in turn.

### A. Sufficiency of the Evidence

For his first argument, Mr. Klingler states that the government failed to prove beyond a reasonable doubt that he was not acting in self-defense and in defense of his

8

habitation because he was on medications that made it difficult for him to hear, and he testified that he feared for his life. Oklahoma law provides that homicide is justifiable when "resisting any attempt to murder such person, or to commit any felony upon him, or upon or in any dwelling house in which such person is." Okla. Stat. tit. 21, § 733(A)(1).

Mr. Klingler raised this sufficiency of the evidence argument on direct appeal before the OCCA, which rejected it. First, the OCCA noted that the government had the burden to disprove Mr. Klingler's self-defense argument beyond a reasonable doubt because Mr. Klingler had presented sufficient evidence to raise the defense. However, the OCCA concluded that the government had presented sufficient evidence to overcome Mr. Klingler's defense of habitation claim. While acknowledging the evidence regarding his self-defense claim was conflicting, the OCCA concluded that substantial evidence refuted Mr. Klingler's assertion that he did not know that the people trying to enter his house were police and his claim that he believed they were attempting to commit a felony in his dwelling.

Specifically, the report and recommendation adopted by the district court noted the considerable noise that occurred near Mr. Klingler's bedroom window as officers attempted to breach his garage, telephone calls and text messages exchanged between Mr. Klingler and third parties prior to the officers attempting to enter the residence, and testimony that Mr. Klingler's gunshots tracked the officers as they retreated from the front porch. Viewing this evidence in the light most favorable to the prosecution, the court held that a rational trier of fact could conclude beyond a reasonable doubt that Mr. Klingler was not acting in defense of habitation.

9

To evaluate sufficiency of the evidence, a federal court must ask "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Ultimately, we must "accept the jury's resolution of the evidence as long as it is within the bounds of reason." *Grubbs v. Hannigan*, 982 F.2d 1483, 1487 (10th Cir. 1993). And we must give deference to the findings of the reviewing state court—here, the OCCA. *See LeBlanc*, 582 U.S. at 94.

Under this standard, we conclude for the same reasons as did the district court that Mr. Klingler has not made "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). While there was evidence from which a jury could have concluded Mr. Klingler acted in defense of habitation, as the OCCA acknowledged, there was also sufficient evidence to support the jury's contrary finding that he was guilty of the crimes for which he was charged. We will not disturb a state court jury's decision by reweighing the evidence. *Messer v. Roberts*, 74 F.3d 1009, 1013 (10th Cir. 1996). Instead, we "accept the jury's resolution of the evidence as long as it is within the bounds of reason." *Grubbs*, 982 F.2d at 1487. Further, because our review is governed by AEDPA, it is doubly deferential. Where the jury's conviction was within the bounds of reason based on the evidence, the OCCA's ruling was not wrong, much less "objectively unreasonable." *See LeBlanc*, 582 U.S. at 94. We therefore deny a COA on this claim.

## B. Double Jeopardy

For his second argument, Mr. Klingler contends that his convictions for both Count One and Count Eleven violated the prohibition on double jeopardy under the state

10

and U.S. Constitutions as well as Oklahoma's statutory prohibition against double punishment. Under Count One, Mr. Klingler was convicted of assault and battery with a deadly weapon. Count Eleven convicted Mr. Klingler of maiming. While not explained in his brief before this court, Mr. Klingler explained in his original petition that both Counts One and Eleven concerned the same act of violence towards the same officer and therefore violated double jeopardy and Oklahoma law.

Again, Mr. Klingler raised this argument on direct appeal before the OCCA. In reviewing Mr. Klingler's contention that his conviction for both Count One and Count Eleven violated Okla. Stat. tit. 21, § 11—Oklahoma's statutory prohibition on double punishment—the OCCA concluded that the district court did not abuse its discretion in finding that there was no violation. In conducting a traditional double jeopardy analysis, the OCCA went on to apply the test from *Blockburger v. United States*, 284 U.S. 299 (1932), and concluded that there was no double jeopardy violation because Mr. Klingler's conviction for maiming required a showing of elements that differed from the crime of assault and battery with a deadly weapon. The district court determined that the OCCA reasonably applied *Blockburger* and that Mr. Klingler's argument provided no basis for habeas relief.

The Supreme Court has reiterated "many times that 'federal habeas corpus relief does not lie for errors of state law.'" *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (quoting *Estelle v. McGuire*, 502 U.S. 62, 67 (1991)). Accordingly, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle*, 502 U.S. at 67–68; *see Dockins*, 374 F.3d at 940 ("Federal habeas courts will not,

11

however, review issues of purely state law . . . .”). “In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.” *Estelle*, 502 U.S. at 68. We therefore decline to consider Mr. Klingler’s arguments that his convictions violated either the Oklahoma Constitution or Oklahoma’s statutory prohibition on double punishment.

Turning to the U.S. Constitution, the Double Jeopardy Clause states that no person shall “be subject for the same offence to be twice put in jeopardy.” U.S. Const. amend. V. In *Blockburger*, 284 U.S. at 304, the Supreme Court held that “where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.” This rule is otherwise known as the “same elements test.” *United States v. Pearson*, 203 F.3d 1243, 1268 (10th Cir. 2000). “In general, statutes punish the same offense when one offense contains all the elements of another even if it contains additional elements.” *United States v. Isabella*, 918 F.3d 816, 847 (10th Cir. 2019) (internal quotation marks omitted).

Assault and battery with a deadly weapon pursuant to Okla. Stat. tit. 21, § 652(C) requires the following elements: (1) an assault and battery, (2) upon another, (3) with a deadly weapon. Okla. Unif. Jury Instr. CR 4-6. Maiming in violation of Okla. Stat. tit. 21, § 751, however, requires a showing of (1) infliction; (2) upon another; (3) of a physical injury that disables, disfigures, or seriously diminishes physical vigor; (4) performed with the intent to cause any injury. Okla. Unif. Jury Instr. CR 4-116. Neither offense contains all the elements of the other. Accordingly, the OCCA reasonably determined that

12

Mr. Klingler's convictions for both assault and battery with a deadly weapon and maiming did not violate the Double Jeopardy Clause of the Fifth Amendment. Reasonable jurists could not debate that the district court correctly rejected Mr. Klingler's double jeopardy argument, *see Silva*, 430 F.3d at 1100, and we therefore deny a COA on this basis.

### C. Lack of Jurisdiction

For his third argument, Mr. Klingler asserts that Oklahoma had no jurisdiction over him because the underlying crimes were committed in Indian country.[2] However, neither in his application before the district court nor in his application for a COA does Mr. Klingler allege that he is Indian.

In affirming the dismissal of his claim for post-conviction relief raising this same argument, the OCCA determined that Mr. Klingler had failed to make a showing that he is Indian, as required for exemption from state prosecution. The OCCA further noted that it was unclear whether Mr. Klingler was arguing that he was an Indian or that states have

---

[2] In his original petition, Mr. Klingler merely asserted that unspecified treaties between the United States and the Chickasaw Nation reserved jurisdiction over crimes occurring in the Chickasaw reservation to either the U.S. government or Chickasaw Nation. In his application for a COA before this court, Mr. Klingler specifies that he relies on the Treaty of Dancing Rabbit Creek and the Treaty of Washington.

"We have long applied the rule that we do not consider issues not raised in the district court to bar not only a bald-faced new issue presented on appeal, but also situations where a litigant changes to a new theory on appeal that falls under the same general category as an argument presented [below]." *Owens v. Trammell*, 792 F.3d 1234, 1246 (10th Cir. 2015) (alteration in original) (internal quotation marks omitted). Because Mr. Klingler's arguments pertaining to specific treaties were not raised before the district court, we treat the arguments as waived and decline to consider them on appeal. *See id.*

13

no authority to prosecute any crimes committed in Indian country. With respect to the present § 2254 petition, the district court likewise concluded that Mr. Klingler had failed to argue that either he or his victims are Indians.

"[A]s a matter of state sovereignty, a State has jurisdiction over all of its territory, including Indian country." *Oklahoma v. Castro-Huerta*, 597 U.S. 629, 636 (2022). Indeed, "unless preempted, States have jurisdiction over crimes committed in Indian country." *Id.* at 638. "[F]ederal jurisdiction over crimes in Indian country is contingent upon the existence of either an Indian victim or perpetrator." *United States v. Langford*, 641 F.3d 1195, 1197 (10th Cir. 2011); *see also* 18 U.S.C. § 1152. And the Indian tribes retain exclusive jurisdiction over "offenses committed by one Indian against the person or property of another Indian" within Indian country. 18 U.S.C. § 1152. However, states and the federal government "have concurrent jurisdiction to prosecute crimes committed by non-Indians against Indians in Indian country." *Castro-Huerta*, 597 U.S. at 632–33. And we have held that "states possess exclusive criminal jurisdiction over crimes occurring in Indian country if there is neither an Indian victim, nor an Indian perpetrator." *Langford*, 641 F.3d at 1197.

Accordingly, to establish that the Oklahoma courts lacked jurisdiction to prosecute him, Mr. Klingler must establish that he is Indian. Yet Mr. Klingler has not clearly argued that he qualifies as an Indian under federal law, much less put forward clear and convincing evidence in support of that assertion. *See* 28 U.S.C. § 2254(e)(1). The OCCA therefore did not act unreasonably in rejecting Mr. Klingler's argument that the Oklahoma courts lacked jurisdiction to prosecute him, and we deny a COA on this basis.

14

### D. Ineffective Assistance of Counsel

In this final argument, Mr. Klingler argues that his counsel was constitutionally deficient for failing to object to the Oklahoma court's lack of jurisdiction over him.[3] While Mr. Klingler did not sufficiently raise this argument when appealing the denial of his petition for state post-conviction relief, the District Court of Grady County determined that any failure to raise this argument was not prejudicial because the argument lacked merit.[4] In rejecting Mr. Klingler's § 2254 petition, the district court also

---

[3] In addition to his jurisdictional argument, Mr. Klingler argues in his COA application that his trial counsel was constitutionally deficient for failing to object to the validity of the officer's warrant to search his home and failing to object to his absence during critical stages of the proceedings. Mr. Klingler did not raise these arguments in his original application before the district court. In the section of his brief regarding ineffective assistance of counsel, Mr. Klingler also argues that the state trial judge should have been disqualified from his case because of personal relationships with the Chickasha law enforcement officers who were victims in the case and that the prosecutor committed various forms of misconduct. Again, these arguments were not raised before the district court.

We generally decline to reach an issue raised for the first time on appeal. *See United States v. Viera*, 674 F.3d 1214, 1220 (10th Cir. 2012) (declining to consider arguments for COA that pro se applicant failed to present in district court); *see also McDonald v. Kinder-Morgan, Inc.*, 287 F.3d 992, 999 (10th Cir. 2002) (noting our general rule against considering new arguments on appeal). We see no reason to depart from that practice here, and we treat these arguments as waived.

[4] While the magistrate judge and the district court judge opted to dispose of Mr. Klingler's ineffective assistance claim on the merits, they believed the state court had determined this argument was procedurally barred and had therefore declined to address its merits. Indeed, the OCCA declared that it agreed with the trial court's determination that all arguments not sounding in jurisdiction were procedurally barred. However, the state trial court addressed the merits of Mr. Klingler's ineffective assistance of counsel claim and determined that any failure to raise a jurisdictional argument was not prejudicial because the argument lacked merit.

15

determined that counsel's failure to raise Mr. Klingler's jurisdictional argument was neither deficient nor prejudicial because the argument lacked merit.

To prevail on an ineffective assistance of counsel claim, a petitioner must show that "counsel's performance was deficient" and "the deficient performance prejudiced the defense." *Strickland v. Washington,* 466 U.S. 668, 687 (1984). Although the *Strickland* test addresses both deficient performance and prejudice, the Tenth Circuit permits "proceed[ing] directly to the issue of prejudice" where that will dispose of the issue. *Castro v. Ward,* 138 F.3d 810, 832 (10th Cir. 1998).

Because Mr. Klingler has not demonstrated that the OCCA acted unreasonably in rejecting his jurisdictional argument, we conclude that Mr. Klingler has failed to make a showing that his counsel was deficient for failing to raise that argument or that he was prejudiced by said failure. Mr. Klingler has therefore failed to make "a substantial showing of the denial of a constitutional right" as required to obtain a COA, and we deny his application on this basis. *See* § 2253(c)(2).

### E.  Motion To Proceed IFP

In addition to his application for a COA, Mr. Klingler seeks to proceed IFP on appeal. To do so, he "must show a financial inability to pay the required filing fees and the existence of a reasoned, nonfrivolous argument on the law and facts in support of the issues raised on appeal." *DeBardeleben v. Quinlan*, 937 F.2d 502, 505 (10th Cir. 1991). Mr. Klingler has not met this burden; our review of the record reveals no nonfrivolous argument in support of his appeal. We accordingly deny his motion to proceed IFP.

16

## IV.    CONCLUSION

For the foregoing reasons, we deny Mr. Klingler's application for a COA as well as his motion to proceed IFP on appeal and dismiss this matter.

Entered for the Court


Carolyn B. McHugh
Circuit Judge